(49 App. Div. 90.)

PEOPLE ex rel. OPRANDY v. CIARCCIA.

(Supreme Court, Appellate Division, Second Department. March 28, 1900.)

1. HABEAS CORPUS—MINOR CHILD—CUSTODY—DISCRETION—RESTRAINT.

The writ of habeas corpus was properly refused to compel relator's daughter, who lacked but a few months of being 18 years old, to return to his home, which she had left to take service in the home of respondent's father, where she was in no manner restrained, and where her surroundings were not shown to be immoral or disreputable, and which place she preferred to her life at home.

2. JUDGMENT—DISMISSAL.

Where a court properly entered an order dismissing a writ with costs, a subsequent judgment reiterating the dismissal as embraced in the order, and embodying a taxation of costs in a specific amount, though unnecessary, was not error, but might be regarded as final judgment in the case.

Appeal from special term, Kings county.

Petition for writ of habeas corpus by the people, on the relation of John Oprandy, against Vincenzo Ciarccia. From an order dismissing the writ, from an order denying relator's motion to set aside an order for reference, from a judgment dismissing the writ, and from an order denying the relator's motion to vacate and cancel the judgment, he appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Roger M. Sherman, for appellant.
David Swits, for respondent.

HIRSCHBERG, J. The appeals are wholly without merit. The relator, on the 12th day of January, 1899, sued out a writ of habeas corpus to secure the custody of his daughter, a minor, who he alleged was imprisoned and restrained of her liberty by Angelo Ciarccia, and by his son, the respondent, Vincenzo Ciarccia. The writ was never served on Angelo. It was served on Vincenzo, who duly made return denying the possession, custody, or restraint by him of the relator's daughter, as alleged in the petition, which return the relator duly traversed, and the issues so raised were sent to a referee to take proof, and submit the same to the court with his opinion. The referee reported the evidence, with his opinion to the effect that the allegations of the relator's petition were not sustained, whereupon the petition was dismissed by the court, with costs and disbursements, and subsequently a judgment was granted and entered to the like effect, with the costs and disbursements inserted as taxed. The petition on which the writ was issued asserted that the relator's daughter, Mary Oprandy, was unlawfully deprived of her liberty by Angelo and Vincenzo Ciarccia, and that by persuasion or force they had induced her to leave her father's house, and to remain and live with Vincenzo Ciarccia, under such circumstances as to injuriously affect her reputation. The evidence presented to the referee conclusively established the fact that the relator's daughter was not deprived of her liberty at all. It demonstrated, on the contrary, that she was enjoying it. The girl attained the age of 16 years on the 11th day of August, 1898. On the 9th day of August, 1898, her father took her

63 N.Y.S.—32

from his home at Mt. Vernon, Westchester county, to the city of New York, and there had her married to a man named Gaudenzio Sgritta, with whom she lived about three months, and that upon the 12th day of December, 1898, the marriage was annulled by a decree of the supreme court, procured in a suit instituted by her father. She charges both her father and her husband with brutal and unkind treatment of her, and alleges that her marriage was forced on her by her father. After she left her husband, she went of her own free choice to live with Angelo Ciarccia, who keeps a grocery store at Mt. Vernon, and where she has been employed to work in the store for her board, support, and lodging.' There is no word of evidence to indicate that she is under the slightest restraint, but, on the contrary, she testified, and her evidence was abundantly corroborated, that she had an unfriendly feeling towards her father because he had driven her from his house, and forced her into a distasteful marriage, and that she preferred to live with and work for Angelo Ciarccia. That an affection exists between her and the respondent, Vincenzo Ciarccia, and that they hope and expect to marry when she reaches the age of lawful consent, is quite apparent; but the evidence is bare of any word or suggestion to the effect that the existing relations between them are either immoral or disreputable. Nor is there the slightest evidence tending to show that she has suffered or will suffer in reputation by the exercise of her choice as to home and occupation. She is in no respect imprisoned, or restrained of her liberty, by any one, and is not even harbored by the respondent, but remains in the service of the respondent's father because she prefers such service to her life at her father's home. Manifestly, the court was not required, under these circumstances, to violently take this young woman, who will be 18 years old in less than 5 months, away from the home of her adoption, and drive her to her father's house. Conceding the power, its exercise would involve serious practical difficulties. But the writ of habeas corpus is not vested with any such office. As was said in People v. Walts, 122 N. Y. 238, 241, 25 N. E. 267:

"The common-law writ of habeas corpus was a writ in behalf of liberty, and its purpose was to deliver a prisoner from unjust imprisonment and illegal and improper restraint. It was not a proceeding calculated to try the rights of parents and guardians to the custody of infant children. It was of frequent use, however, when children were detained from their parents or guardians, on the ground that absence from legal custody was equivalent to illegal restraint and imprisonment. In the case of children of the age of discretion the object of the writ was usually accomplished by allowing the party restrained the exercise of his volition, but in the case of an infant of an age to be incapable of determining what was best for itself the court or officer made the determination for it, and, in so doing, the child's welfare was the chief end in view. Rex v. Delaval, 3 Burrows, 1435; In re Waldron, 13 Johns. 418; People v. Mercein, 8 Paige, 47, 25 Wend. 73; People v. Wilcox, 22 Barb. 178; Wilcox v. Wilcox, 14 N. Y. 575; People v. Weissenbach, 60 N. Y. 385; Hurd, Hab. Corp. c. 9. The purpose of the writ as now regulated by the Code is the same. Code Civ. Proc. §§ 2015–2031.''

The appellant's daughter is exercising her own volition. The respondent is exerting no influence or control over her. The appel-

lant·cannot say, nearly a year after a marriage which he has forced upon her, that she is too young to have a will of her own. The case is barren of proof that her interests or welfare require a change in her status or disposition, and she is, under the circumstances of the case, beyond the discipline or control of the court. The order dismissing the writ was, therefore, proper, and it was in the discretion of the court to award costs. In re Barnett, 11 Hun, 468. The ·case of People v. New York Catholic Protectory, 106 N. Y. 604, 13 N. E. 435, is distinguishable. There the child was committed by a police justice after the examination of charges under the provisions of the Penal Code. The proceedings being criminal in their nature, there was no authority to impose costs upon the institution to which she was committed in habeas corpus proceedings designed to secure her release. So, in People v. Gilmore, 88 N. Y. 626, where the proceeding was for a criminal contempt. Here, however, there has been no criminal charge or commitment, and the proceeding is a civil one.

The so-called "judgment" entered in the proceedings on the 19th day of June, 1899, was perhaps unnecessary, and may be regarded in form as unauthorized. As was said of it, however, by the learned justice at special term, it declares no rights founded on error, but merely reiterates the dismissal of the writ as embraced in the order of the court entered May 24, 1899, and embodies the taxation of the costs and disbursements in a specific amount, as to which the appellant alleges no error. It may be reasonably regarded as the final order in the proceeding.

The orders should be affirmed, with $10 costs in all, and the disbursements. All concur.