(75 App. Div. 365.)

### PEOPLE ex rel. WATSON v. BUFFETT.

(Supreme Court, Appellate Division, Second Department.  October 10, 1902.)

1. HABEAS CORPUS—CONSTRUCTIVE RESTRAINT—INFANTS.
    Absence from the custody of parents of a girl 18 years old, emancipated, and entitled to her wages, and obliged to earn her living, is not absence from legal custody, which is equivalent to restraint, so as to justify habeas corpus proceedings, under Code Civ. Proc. §§ 2015–2031, authorizing the writ to release from illegal restraint.

2. SAME—HEARING.
    Under Code Civ. Proc. § 2031, providing that in habeas corpus proceedings the court shall examine into the facts, a decision cannot be rendered against defendant on the merits, with a requirement that he pay the costs, where he is not allowed to give testimony explaining his conduct, and rebutting the inference that he is an improper custodian for an infant, and is told that he is out of the case, and had no occasion to come at all.

Appeal from special term, Kings county.

Habeas corpus, on the relation of Lily Watson, her mother, Helene Watson, being the petitioner, against George Henry Buffett. From an order awarding custody of relator to petitioner, and imposing costs on the defendant, relator and defendant appeal. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Rowland Miles, for appellants.
Isaac W. Jacobson, for respondent Helene Watson.

HIRSCHBERG, J.  The petitioner, Helene Watson, is the mother of the relator, Lily Watson, an infant in her nineteenth year. Her mother has a number of other children, and is unable to support them unaided, so that Lily for a number of years has been obliged to earn her own living.  For four years prior to the institution of these proceedings she was employed as a domestic by George Henry Buffett, a farmer in Suffolk county, and a man of family.  This employment was entered into with her mother's knowledge and consent.  On the petition of Lily's mother, alleging that she (the daughter) was "restrained in her liberty" by Buffett, a writ of habeas corpus was duly issued and served upon him, on the return of which he answered to the effect that her relation with him was purely voluntary, being that of employer and employé, and that she was under no restraint whatever, which answer the petitioner traversed by a general denial.  During the hearing the learned trial justice made a final order awarding the custody of the relator to her mother, and imposing upon Buffett the costs of the proceeding.  The relator appeals from the entire order, and Buffett from so much of it as imposes costs upon him.

The record discloses no justification for the order.  On the hearing, so far as it had progressed at the time the order was granted, no proof was made that the relator was under restraint or imprisonment.  Mr. Buffett testified that she was free to leave his family at any time she desired to, no restraint of any kind being exerted by him or on his behalf to prevent it; and she testified to the same effect, adding that she was satisfied with her situation, her wages, and her work, and did not want to go to her mother's home.  The court made no finding that there was any restraint or imprisonment, basing the order upon a different ground, which will be considered hereafter. Even had it appeared that the relator, who has arrived at years of discretion, was under restraint, the office of the writ of habeas corpus would be fully accomplished in this case by removing the restraint, leaving to her the full exercise of her own volition.  The case is not presented of an infant of such tender years as to be incapable of determining for itself what is best, but of one considerably past the age when the law permits a marriage without the parents' consent, and confers the right to make a testamentary disposition of personal estate; one who has long been emancipated, is entitled to her own wages, and is compelled by circumstances to earn them for her own support.  In such a case the absence of the infant from the custody of parents or guardians is not absence from legal custody, and therefore is not of itself equivalent to illegal restraint or imprisonment; and while lawfully and voluntarily engaged at work under the contract of employment in the exercise of its free and unconstrained choice and volition, the infant cannot be said to be under restraint

or imprisonment, either actual or constructive. In this case the evidence conclusively demonstrates that the relator has been under no restraint until she was imprisoned by the order appealed from. "The common-law writ of habeas corpus," said the court in People v. Walts, 122 N. Y. 238, 241, 25 N. E. 266, 267, "was a writ in behalf of liberty, and its purpose was to deliver a prisoner from unjust imprisonment and illegal and improper restraint. It was not a proceeding calculated to try the rights of parents and guardians to the custody of infant children. It was of frequent use, however, when children were detained from their parents or guardians on the ground that absence from legal custody was equivalent to illegal restraint and imprisonment. In the case of children of the age of discretion the object of the writ was usually accomplished by allowing the party restrained the exercise of his volition; but in the case of an infant of an age to be incapable of determining what was best for itself the court or officer made the determination for it, and in so doing the child's welfare was the chief end in view. Rex v. Delaval, 3 Burrow. 1435; In re Waldron, 13 Johns. 418; People v. Mercein, 8 Paige. 47; Mercein v. People, 25 Wend. 73, 35 Am. Dec. 653; People v. Wilcox, 22 Barb. 178; Wilcox v. Wilcox, 14 N. Y. 575; People v. Weissenbach, 60 N. Y. 385; Hurd, Hab. Corp. c. 9. The purpose of the writ, as now regulated by the Code, is the same. Code Civ. Proc. §§ 2015–2031." See, also, People v. Ciarcia, 49 App. Div. 90, 63 N. Y. Supp. 497, where, under circumstances quite similar to those herein presented, the father was denied the custody of his daughter, 16 years old. But, as has been said, the order in this case was not granted upon the ground that the relator was subjected to any restraint, as alleged in the petition, and which, had it existed, would have required, under the terms of section 2031 of the Code of Civil Procedure, only an order discharging her therefrom; but the order appealed from is one awarding the custody of the relator to her mother, and appears to have been based solely upon the belief entertained by the learned trial justice that Mr. Buffett had not acted with good judgment and discretion on a certain occasion prior to the employment of the relator. At that time an elder sister of the relator was working for Mr. Buffett, and the petitioner's husband (their stepfather) had written to her a most vile and obscene letter, which Mr. Buffett had accidentally and inadvertently intercepted. She left his employ a few months afterwards, and he thereupon informed the mother of the fact of the letter, and appears to have threatened to prosecute the stepfather for writing it, and for the relations which it tended to disclose, in consequence of which the latter fled to Cuba. Mr. Buffett did not, however, at once write to the petitioner in reference to the letter, and for that reason the court concluded that he was not a proper custodian of the relator, stating that "any man that got such a letter as that addressed to a girl who was under his protection, and gave it to her, and didn't write to her mother that she had got it, is not a fit custodian for any young girl, and I shall not have her under his roof another hour. Mr. Miles: Will your honor hear me a moment? The Court: No; I won't hear another word from you." The hearing was thereafter adjourned to December 9, 1901, and, although the

counsel for Mr. Buffett insisted that his action in reference to the letter was taken after conference with his wife, and in the exercise of their best judgment, and asked on the adjourned day to be allowed to give further testimony on the subject, the court refused to hear him or the evidence; saying: "I told you the other day that you were out of this case. You have nothing further to do with it. You had no occasion to come here at all." The order imposes upon Mr. Buffett, as the defendant in the proceeding, the sum of $62.21 costs, taxed "as on the trial of an action," and authorizes the issuance of an execution therefor. It is unnecessary to pass upon the wisdom or propriety of the defendant's conduct prior to the employment of the relator, or to determine how far, if at all, it may tend to justify a judicial severance of their contractual relations. But it is plain that a decision cannot properly be rendered against a defendant upon the merits in any legal proceeding, and requiring him to pay a bill of costs, without an opportunity being afforded to him to be heard; that, when prosecuted, he has a right to be in court, and to have his day in court; and that the examination into the facts which is required of the court by section 2031 of the Code, supra, involves and implies a full, fair, patient, and impartial hearing.

The order should be reversed. All concur.