### PEOPLE ex rel. LA FORTE v. RUBIN.

(Supreme Court, Special Term, Onondaga County. December 8, 1905.)

1. INDIANS—CUSTODY OF CHILD—HABEAS CORPUS—JURISDICTION.

Under Domestic Relations Law, Laws 1896, p. 222, c. 272, § 40, providing that the husband or wife, being an inhabitant of this state, living in a state of separation without being divorced, who has a minor child, may apply to the Supreme Court for a writ of habeas corpus, and have the child brought before the court, and on the return the court may award the custody of the child to either parent, under such regulations as the case may require, habeas corpus proceedings may be maintained by an Indian woman, a ward of the United States government living on an Indian reservation, where she is living in separation from her husband without being divorced.

2. MARRIAGE—ESSENTIALS—INDIAN CUSTOM.

Under Laws 1892, p. 1574, c. 679, § 3, providing that Indians who contract marriage according to the Indian custom and cohabit as husband and. wife shall be deemed lawfully married, members of the Onondaga Nation, who were married according to custom of that nation, consisting simply in an agreement to live together as man and wife, and in following out that agreement till by mutual consent or otherwise a separation occurs, were lawfully married.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Marriage, § 6.]

3. PARENT AND CHILD—RIGHT TO CUSTODY OF CHILD.

Where, on separation of a husband and wife without procuring a divorce, the husband forcibly took their child and placed it with its grandmother, with whom it lived till her death, when it remained with an aunt, the mother of the child, leaving aside the question of its welfare, is entitled to its custody as against the aunt.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Parent and Child, § 13.]

4. SAME—FORFEITURE OF RIGHT.

A mother who for eight years never made any claim to the custody of her child, who resided during that time with its grandmother and aunt, forfeited her legal right to its custody.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Parent and Child, §§ 23, 24.]

5. SAME—WELFARE OF CHILD—EVIDENCE.

In habeas corpus proceedings by a mother for the custody of her child, evidence *held* to show that the welfare of the child will be best promoted by leaving it in the custody of the respondent, an aunt of the child.

Habeas corpus proceedings by the people, on the relation of Leah La Forte, against Sarah Rubin for the custody of Kimball Thomas. Writ dismissed.

The following is the report of the referee:

To the Hon. Maurice L. Wright, Justice of the Supreme Court: Pursuant to an order made by you in the above-entitled matter, and dated October 20, 1905, whereby I was directed to take the evidence in said matter and report the same to you, with my opinion thereon, I herewith respectfully report that I have taken said evidence, and herewith submit the same, my opinion in the matter, preceded by a statement of the facts, being as follows: The relator

herein, Leah La Forte, an Indian, on the 11th day of October, 1905, petitioned
your honor for a writ of habeas corpus directing one Sarah Rubin to produce
before you on a certain day the body of one Kimball Thomas, alleged to be
illegally imprisoned and restrained by her at her home on the Onondaga
Indian reservation. Return to the writ was duly made, and said Kimball
Thomas produced. It appears from the evidence taken on the hearings be-
fore me that both the relator and the respondent are Indians, residing at
the Onondaga Reservation, and that relator is the mother of said Kimball
Thomas, who is a boy about 11 years of age. It further appears that re-
spondent is the aunt of the boy, being a sister of the boy's father. It is un-
disputed that the father of the boy, one Eddie Thomas, also an Indian, was
married to relator by the Indian custom of marriage about 12 years ago, and
that they lived together until the child was about 3 years of age, when the
parents separated, and the boy was taken to his grandmother's, an Indian,
one Elizabeth Thomas, where he lived up to the time of her death, which
occurred about 2 or 3 years ago. Since that time he has lived with his aunt, the
respondent, Sarah Rubin. Some interesting questions have arisen on the
examination of this matter. Counsel for respondent raises the question of
jurisdiction. The parties are Indians, wards of the United States government,
living on their Indian reservation. There is no question in my mind but
what this court has jurisdiction of these proceedings, and has the power to
issue the writ. In People ex rel. Pruyne v. Walts, 122 N. Y. 238, 25 N. E. 266;
it was stated by the court that "the common-law writ of habeas corpus was
a writ in behalf of liberty, and its purpose was to deliver a prisoner from
unjust imprisonment and illegal restraint. It was not a proceeding calculated
to try the rights of parents and guardians to the custody of infant children.
It was of frequent use, however, when children were detained from their
parents or guardians on the grounds that absence from legal custody was
equivalent to illegal restraint and imprisonment. In the case of children
of the age of discretion, the object of the writ was usually accomplished by
allowing the party restrained the exercise of his volition; but in the case of
an infant of an age incapable of determining what was best for itself, the
court or officer made the determination for it, and in so doing the child's
welfare was the chief end in view. The purpose of the writ, as now regulated
by the Code, is the same." Code. Civ. Proc. § 2015 et seq. The Domestic Re-
lations Law, Laws 1896, p. 222, c. 272, § 40, et seq., says: "The husband or
wife being an inhabitant of this state, living in a state of separation without
being divorced, who has a minor child, may apply to the Supreme Court for
a writ of habeas corpus to have such minor child brought before such court;
and on the return thereof, the court, on due consideration, may award the
charge and custody of such child to either parent for such time, under such
regulations and restrictions as the case may require, and may at any time
thereafter, vacate or modify such order." This section is derived from Rev.
St. (1st Ed.) pt. 2, c. 8, tit. 2, §§ 1–3. The sole requirement of the statute as
to the status of the husband or wife living in a state of separation without
being divorced is that he or she shall be an inhabitant of this state. It draws
no line between color or race, white, black, or red, but declares that he or
she must be an inhabitant. In the case before us relator is an inhabitant,
is living in a state of separation from her husband, without being divorced,
and the child is a minor. Consequently the court has jurisdiction.

Some dispute has arisen as to the legitimacy of the boy whose custody is
here sought by the relator. While in the view I take of the case his legiti-
macy is not a fact of vital importance, nevertheless, it seems best to me to
touch on that point in passing, since counsel for relator bases one of his
strongest arguments on the allegation that the child is illegitimate; and in
this connection the Indian custom of marriage must be explained. Eddie
Thomas and the relator, father and mother, respectively, of the child, were
married by Indian custom. This custom, as the undisputed evidence of several
of the witnesses discloses (and some of these witnesses were leading people
of the Onondaga Nation), consists merely in an agreement to live together
as man and wife, and in following out that agreement by so doing until by
mutual consent or otherwise a separation occurs. It appears that this is one
of the most ancient of the Indian customs, and is largely adhered to at the

present time by the Indians. It has also been made legal by the laws of this state. Laws 1849, p. 577, c. 420, §§ 3, 4, as found in 2 Cumming and Gilbert's General Laws, p. 1686, § 3. 'I quote therefrom: "The laws of the state relating to the capacity to contract marriage, the solemnization of marriage, the annulment of the marriage contract and divorce, are applicable to Indians; and, subject to the jurisdiction of the peacemakers' courts of the Seneca Nation to grant divorces, the same courts shall have jurisdiction of actions arising thereunder as if such Indians were citizens; but Indians who have heretofore or shall hereafter contract marriage according to the Indian custom or usage and shall cohabit as husband and wife, shall be deemed lawfully married, and their children legitimate." This was re-enacted in the Indian law found in Laws 1892, p. 1574, c. 679, § 3. Applying this to the case in hand, I cannot see how the legitimacy of the child can be questioned, and by the undisputed evidence of the father himself, Eddie Thomas, he had no wife living when he married relator, so that the claim of the relator that the boy is illegitimate has no foundation whatever.

Leaving aside the question of what is best for the boy's welfare—the question which we deem of paramount importance in this case, and which we shall consider a little later—I must now touch on the relative rights of the relator and the respondent to the custody of the child. Relator is the mother and respondent is the aunt of the boy. The evidence of the relator was that the boy was forcibly taken from her by the father and placed with its grandmother. It further appears that he lived with said grandmother until her death, when he remained with the respondent. Purely, as between the mother and the aunt, the mother would undoubtedly be entitled to the custody of the child, were we to ignore questions as to the character of the parties and the best interests of the boy. It appears from the evidence of the mother herself, however, that she was accustomed to drink intoxicating liquors, and that she became intoxicated several times while the boy lived with her. It further appears that after separating from Eddie Thomas she lived with three different men, and for several years after said separation bore a questionable reputation. The result of the relator's assuming custody of the boy would be largely in doubt, in view of her past life and the uncertainty whether or not her acts would be repeated. Undoubtedly, the child was taken by force by the father, and placed with its grandmother, but the father's testimony was that he did so for the best interests of his child; and as the natural father of the boy, his right to place his child where he considered that his best interests would be conserved can only be commended and approved. He still wishes the boy to remain with respondent for the same reasons. It seems to me that the mother (the relator here) by her past life has forfeited her claim to the custody of the child. Further, it appears that for nearly eight years she never made any claim for the boy, or tried to obtain him, and that her first effort in that direction occurred some two months ago. Her motive for that effort seems to me to be quite apparent. · It appears that, by a recent award of money by the United States government to the Indians, the sum of $100 has come to the boy, and the probability is that this will shortly be increased. The mother for eight years never made a move to obtain custody of her child until he came into some money. On the other hand, the respondent, even while the boy lived with his grandmother, bought his clothes and hired his washings done. It does not appear that the relator ever contributed a thing toward the support of the boy—her own child. Since the grandmother's death respondent has cared for the boy, actuated, so far as I can see, by no other motive than her affection and pity for him. It seems to me that the mother practically abandoned her child, and that in so doing she forfeited, in large measure, her right to his custody. In this connection the case of People ex rel. Wehle v. Weissenbach et al., 60 N. Y. 386, is in point. In that case a father petitioned for a writ of habeas corpus, seeking the custody of his daughter, an infant seven years of age. It appeared that the father in 1869 placed the girl to board with the board of commissioners of charities and corrections of the city and county of New York, paying a certain amount for her board. In 1870 defendants obtained the child from the commissioners, and claimed to hold her as an apprentice by virtue of indentures made with them by said commissioners. It appeared

that the father had paid for only one month's board of the girl with the commissioners, and that he then left the state, and the child was left on the hands of the commissioners as a pauper. The father's petition was dismissed; the court intimating that he had virtually abandoned his daughter, and was not entitled to her custody. In his case the mother paid no attention whatever to the child for even a longer time than in the case above, and I am inclined to believe that, but for the fact that the boy has come into a little money, these proceedings would never have been instituted. On this point the case of In re Murphy, 12 How. Prac. 513, offers authority. A mother brought habeas corpus for the custody of her boy nine years old. When the boy was eleven weeks old he was placed with relatives, who always gave him the best of care, and to whom he clung with filial devotion. The court said: "Does not nine years of undisturbed possession on the one hand, and of uninterrupted acquiescence on the other, constitute as good evidence of the understanding of the parties as any written instrument?" In other words, the mother because of her acquiescence for so long a time was refused custody of the child; it appearing that the child's welfare was receiving the best of attention. Her petition was dismissed. The case seems very similar on this point to the one before us.

The sole remaining point to be considered is what is best for the welfare of the child. Will he be better off morally, financially, and physically, will his comfort and education be better attended to by relator or respondent? "The jurisdiction of the court is equitable in its character. The welfare of the child is the chief object to be obtained, and must be the guide for the judgment of the court." People ex rel. Pruyne v. Walts, 122 N. Y. 238, 25 N. E. 266. The rule laid down in a long line of cases, and which is established beyond dispute, is that in a controversy for the custody of an infant of tender years the court will consider the best interests of the child, and will make such order for its custody as will be for its welfare, without reference to the wishes of the parties, their parental rights, or their contracts. In re Waldron, 13 Johns. 418; People v. Mercein, 8 Paige, 47; People v. Pillow, 1 Sandf. 672; People v. Kling, 6 Barb. 366; People v. Cooper, 8 How. Prac. 288; People v. Olmstead, 27 Barb. 9; In re Lesslier, 17 Abb. Prac. 397; In re Holmes, 19 How. Prac. 329; People v. Brooks, 35 Barb. 85; In re Schroeder, 65 How. Prac. 194; People v. Brown, 35 Hun, 324; Day v. Day, 4 Misc. Rep. 235, 24 N. Y. Supp. 873; In re McDowle, 8 Johns. 328; People ex rel. Winston v. Winston, 31 App. Div. 121, 52 N. Y. Supp. 814; People ex rel. Sternberger v. Sternberger, 12 App. Div. 398, 42 N. Y. Supp. 423; In re Paddock v. Eager (Sup.) 10 N. Y. Supp. 710; In re McKain, 17 Abb. Prac. 399; People v. Erbert, 17 Abb. Prac. 395. In the case of In re Waldron, 13 Johns. 418, cited above, the court said: "Where a habeas corpus is directed to a private person to bring up an infant, the court is bound to set the infant free from improper restraint; but whether they shall direct it to be delivered over to any particular person rests in their discretion under the circumstances of the case, and that although the person making the application be the father of the infant." In that case the infant was in the custody of its grandfather, and it appeared that it would be more for its benefit to remain with him than to be put in the care of the father. No improper restraint was shown, and the court refused to direct the infant to be delivered to the father. In People ex rel. Davenport v. Kling, 6 Barb. 366, the court said: "In the case of a child too young to be capable of determining for itself, the court or officer assumes to determine for it, and in doing so the welfare of the child is chiefly, if not exclusively, to be held in view. Upon habeas corpus to determine as to the custody of an infant, all the court is bound to do is to set the infant free from improper restraint. Whether it will deliver it over to anybody is left to its discretion. The rights of the parental authority are to be regarded no further than they are considered consistent with the best good of the child." In the Matter of Schroeder, 65 How. Prac. 194, the court says: "The security, good conduct, and wellbeing of infant children are the important considerations to be regarded, and when those considerations can only be best accomplished by depriving the mother of their custody, it is the uniform practice of the courts to give such a direction." Other cases maintaining this principle are In re Reynolds

(Sup.) 8 N. Y. Supp. 172; Matter of Wollstonecraft, 4 Johns. Ch. 80; In re Clifton, 47 How. Prac. 172; In re Welch, 74 N. Y. 299; People v. Trafford (Sup.) 12 N. Y. Supp. 43; People v. Manley, 2 How. Prac. 61; In re Watson, 10 Abb. N. C. 215; In re Riemann (Super. Buff.) 10 N. Y. Supp. 516. People ex rel. Trafford v. Trafford (Sup.) 12 N. Y. Supp. 43, offers a strong authority also. That was a habeas corpus by a father to obtain custody of his daughter, five years old, from the mother, with whom she lived. The parents had two children. Trouble arose between them, and the wife left her husband, taking both children with her. Later she sent one girl to her grandparents, and again later tried to get her back from them, but on their refusal she went and took her by force. The allegation was made that the other daughter died as a result of the mother's acts in refusing proper medical attendance; that Christian Science treatment was used, and the child really died from neglect; and that the mother was wholly unfit for the custody of the remaining child. The court said: "The welfare of the child is the object to be secured. Where will her health, education, and morals be best cared for? Her expectations as to property, though of minor importance, should be given proper weight. Neither parent has any rights touching the custody of children which can be allowed to mitigate against the welfare of the child. Its custody may be awarded to either parent, or they may both be refused its custody, and its custody awarded to some other person." The court held that, in view of the facts as proven, and in view of the fact that both father and mother were poor, while the grandfather was wealthy, it was for the best interest of the child that she should be given to the grandfather. This was done.

The argument of counsel for relator, that relator's right to the custody of the child is paramount to that of the alleged putative father, must be disregarded, in our view of the matter that the boy is legitimate offspring. The authorities cited by counsel for relator are on the point of the mother's right as opposed to that of the putative father, and I do not consider them in point. Even in this case, if the boy was illigitimate, I would still deem it for his best interests that his mother be refused his custody.

It is contended by relator that at present the boy comes in daily contact with a pagan Indian, namely, Morris Lyon, the present husband of the respondent, and that it will be dangerous for his well-being and morals to be subjected to such contact; also that relator is a Christian, and married to a Christian husband, and that the boy should have the advantages of such an environment. On this point the evidence shows that respondent is a member of the Episcopal Church, and that up to a recent date has kept the boy in constant attendance at the Sunday School. I do not fear for the future welfare of the boy in the hands of respondent. It appears that she has taken the best of care of him, that she has a tender affection for him, and that he possesses many of those things that go to make life happy for a boy, the gifts of respondent to him; in fact, he seems better off than the average boy of parents in moderate circumstances. He seems fond of her, and well satisfied where he is. The undisputed evidence shows that the respondent is a kind, generous woman of ample means, far more so than relator; that she clothes the boy well, keeps him constantly at school, where his morals, comfort, and education receive proper attention. No illegal restraint or imprisonment is exercised by respondent. Relator claims that she is well able to care for the boy, but there is some doubt in my mind of that, since both her title and that of her husband to the property they live on has been disputed before me on the trial of the matter. Under these circumstances, I do not deem it for the boy's best interest to be removed from the custody of the respondent, who has no children, and who takes such a lively interest in his welfare. While I can appreciate the feelings of a mother who from good motives seeks the care, custody, and society of her child, yet I am not able in this case to find ground for disturbing the respondent in the possession of the boy.

The writ should be dismissed, but I recommend that the petitioner be allowed to see the child at all reasonable times.

William Gilbert, for relator.

Lawrence T. Jones, for respondent.

ANDREWS, J. Report confirmed, and writ dismissed.