PEOPLE ex rel. HUME v. PHELPS et al.

(Supreme Court, Special Term, Westchester County. April 17, 1908.)

1. HABEAS CORPUS—DETERMINATION OF ISSUES—CUSTODY AND CONTROL OF CHILD—WELFARE OF CHILD.

A parent has the legal right to control a minor child, providing it will not interfere with the child's happiness and welfare; but the court will not give custody of a child, even to a parent, if the change is likely to be to the child's disadvantage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Habeas Corpus, § 84.]

2. SAME.

On habeas corpus, the future welfare of a child almost 11 years old, who had lived with respondents for 10 years and was well trained and cared for by them, will be best served by remanding her to their custody, where the mother had not visited the child for over 6 years, and only a

few times for a few moments during the previous 4 years that she lived with respondents.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Habeas Corpus, § 84.]

Habeas corpus by the people, on the relation of Pleasant B. Hume, against George Phelps and another, to secure the custody of relator's minor child. Writ dismissed, and child remanded to respondents' custody.

N. P. Bushnell, for relator.
James Dempsey, for respondents.

TOMPKINS, J. The question that is paramount to all other considerations in this proceeding is the welfare of the child, whose custody is sought by the relator. The facts, briefly stated, are as follows: When the child was about 9 months old she was placed by the mother, the relator, who was living separate and apart from her husband, in the custody of Mr. and Mrs. Phelps, who were childless and living in the city of Chicago, where the mother and child also resided. Mr. and Mrs. Phelps continued to live in Chicago for about 4 years, during all of which time they had the exclusive custody and care of the child, and during which time the mother called to see the child only three times for a few minutes on each occasion, and contributing towards her support and maintenance the sum of about $50. About 6 years go Mr. Phelps moved with his wife and the child to Peekskill, N. Y., where the concern for which he had worked for several years in Chicago set up a business. Their removal was solely for the purpose of enabling Mr. Phelps to take charge of his old employer's new vinegar-making business in Peekskill. Since then they have lived in Peekskill, keeping house, and caring for and educating the child, who is now nearly 11 years of age. During their 6 years' residence in Peekskill the child's mother has never visited her, until about 2 or 3 weeks ago, when she went there to demand her custody and take her to San Francisco, where she now resides, and during these 6 years has contributed nothing towards the child's support. Mr. and Mrs. Phelps have clothed, fed, educated, and cared for the child in all respects as their own child, and from appearances, as well as from the testimony taken before me, I conclude that she has had most excellent care and careful training. She has never known any other parent, having always called Mr. and Mrs. Phelps "papa" and "mamma," and never knew that she had any other mother until very recently. The reason given by Mrs. Phelps for concealing from the child the truth in reference to the matter seems to me to have justified her in so doing. The mother's reason for so long neglecting her child, and her failure to sooner make a claim for her custody and an offer to support her, is not satisfactorily explained.

Of course, the mother has the legal right to control her minor child, providing such control shall not interfere with the child's present and future happiness and welfare, and the court will not give the custody of a child even to a parent, if the change is likely to be to the disadvantage of the child. In this case the child has never known her own

mother, while she has grown to know Mr. and Mrs. Phelps as her parents, and loves them as such, and now, at the age of nearly 11 years, she declares her affection for and attachment to them, and deliberately and positively and with much feeling insists upon being allowed to continue living with them. She is remarkably intelligent for her age, and it seems to me that it would be cruel to force her against her will to go with her mother, a comparative stranger to her, to the Pacific Coast, and away from the only home she has ever known and the people who have stood in the relation of parents to her ever since her infancy.

If the child was a few years younger, it might well be claimed that the court should place her in the custody of her mother, in order that her affections might be restored to their natural channel, and that she might learn to love her mother most; but at the present age of the child, and with her intelligence and strong love for the respondents, and the feeling that was manifested at the hearing, I am forced to the conclusion, regrettable as it is, that the child would not be happy and contented with her mother in the West, and that it would be greatly to her disadvantage to be taken from her present home. All legal rights and claims must give way to the health, happiness, welfare, and best interests of the child, and I am constrained to find that the breaking of the tender and loving attachment which has most naturally grown up between the respondents and the child during the past 10 years would result in irreparable injury to the child's present and future welfare.

The claim that the child's mother is morally unfit to have the custody of her child is not sustained by the evidence. Were the circumstances respecting the life of the child not as they are, or if she were a younger child, whose affections might be directed and formed by new associations and the love, attention, and devotion of the mother, I should grant the mother's application for the custody of the child, because I am satisfied that she is a fit and proper person for the care of her child; but because, in my judgment, the welfare of the child would not be served by such a change, and that her best welfare will be promoted by a continuation of the relations now existing, I am led to deny the application.

Writ dismissed, and child remanded to the custody of the respondents. No costs.