(156 App. Div. 174.)

### Ex parte MEYER.

### Appeal of ROBITZEK.

(Supreme Court, Appellate Division, First Department. April 4, 1913.)

1. HABEAS CORPUS (§ 99*)—CUSTODY OF CHILDREN—CONTROLLING CONSIDERATION.

In awarding the custody of a child of tender years, his welfare is the controlling consideration, to which even the parents' claims must yield.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 84; Dec. Dig. § 99.*]

2. HABEAS CORPUS (§ 99*)—CUSTODY OF CHILDREN—RIGHT TO.

The custody of a female child 3½ years old is properly committed to her grandfather and aunt, as against her father, subject to the father's right to visit the child, where it appears that the child's welfare will be thereby promoted; the father having indicated, through neglect of his wife before her death and otherwise, that hatred for her relatives rather than affection for the child prompts him to seek its custody.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 84; Dec. Dig. § 99.*]

Dowling and Laughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Application by Leopold A. Meyer for writ of habeas corpus against Edward Robitzek. From the final order, both parties appeal. Modified.

See, also, 141 N. Y. Supp. 1131.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Jacob H. Corn, of New York City, for appellant.
Ernest Hall, of New York City, for respondent.

SCOTT, J. The order appealed from awards the custody of a female infant, now about 3½ years of age, to her father, Leopold Alfred Meyer, with a provision that the child shall be taken to the residence of its maternal grandfather once in each month, there to remain for the period of six days, with the privilege to said grandfather and his daughter, the infant's aunt, to visit the child once in each week for the remaining weeks of each month, and upon such visits to remain with the child for three hours.

At the time the writ was sued out, and while the evidence was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

being taken before the referee, both the father and the grandfather lived in the borough of the Bronx, in the city of New York. We are now advised by the briefs of counsel for both parties, as well as by the papers submitted upon another appeal in the same matter and now on our files, that the father has now removed to Boston, in the state of Massachusetts, taking the child with him, and that he proposes to remain there. Assuming this to be true, it is apparent that the condition in the order which provides that the child shall be carried back and forth between Massachusetts and this city once in every month is intolerable, and one which cannot make for the benefit of the child, which, under the more enlightened rules respecting the custody of children which now obtain, must be the finally controlling consideration. The most elementary knowledge of the precaution necessary to be taken to insure the proper rearing of young children will render it easy to appreciate the injury likely to result to so young a child if it be made the subject of such a game of "battledore and shuttlecock" as would result from carrying out in this particular the order appealed from. We are therefore convinced that this provision of the order, at all events, cannot be allowed to stand, and that the child must be entirely confided to the custody of one or the other of the parties who seek its custody, being its father and grandfather, with provisions that the one to whom custody is not awarded shall be afforded opportunity to see the child upon reasonable conditions.

[1] It is now too well settled to require fortification by extended citations from cases that, in determining to whom the custody of an infant of tender years shall be confided, the paramount and controlling consideration is the welfare of the infant. To this all other considerations must be subordinated, including the wishes of the parents, or, as in this case, the surviving parent. Of course, a father or a mother has a strong natural claim to the custody and companionship of a child; but even this must give way, where it clearly appears that the child's welfare requires a different disposition of its custody. In re Waldron, 13 Johns. 418; People ex rel. Barry v. Mercien, 8 Paige, 47; People v. Wilcox, 22 Barb. 178; Wilcox v. Wilcox, 14 N. Y. 575; People ex rel. Wehle v. Weissenbach, 60 N. Y. 385; People ex rel. Oprandy v. Ciarcia, 49 App. Div. 90, 63 N. Y. Supp. 497; Wood on Habeas Corpus; Matter of Riemann (Sup.) 10 N. Y. Supp. 516; People ex rel. Humex v. Phelps, 58 Misc. Rep. 625, 109 N. Y. Supp. 943; Matter of Knowack, 158 N. Y. 482, 53 N. E. 676, 44 L. R. A. 699; Matter of Wentz, 9 Misc. Rep. 240, 30 N. Y. Supp. 211; In re Welch, 74 N. Y. 299; People v. Rubin (Sup.) 98 N. Y. Supp. 787; People v. Trafford (Sup.) 12 N. Y. Supp. 43; People v. Olmstead, 27 Barb. 9; Matter of Henry C. Eastman, N. Y. Law Journal, July 18, 1911 (Bischoff, J.).

[2] So far as concerns its present care and its future material prospects, there seems little room to doubt that the child's interests will be best subserved if its custody be awarded to its grandfather, Edward Robitzek. He is a man of approved character, now about

53 years of age, living in the borough of the Bronx, possessed of large means, and engaged in an extensive and lucrative business. His wife has recently died, but there lives with him a daughter, of whom the referee said:

"She impressed me as being a very conscientious, capable, and refined young woman, and also as being exceptionally intelligent. In my judgment, she is well qualified to take care of the child in question."

In point of fact, she has taken care of the child for a great part of the time since its birth, for its mother during the latter part of her lifetime was too ill to give much personal care to the child. Edward Robitzek is undoubtedly sincerely attached to the child, and has given practical evidence of his attachment, in that he has made a handsome provision for it in his will. Of course, there can be no assurance that he may not hereafter alter his will; but the fact that he should have made such a provision is strong evidence of his affection for the child and of his intention to provide for its future. If there were no question in the case of the supposed preferential right of the father to the custody of his child, no one would question for an instant that the grandfather is an eminently proper person to have the custody of this child, and that its commitment to his care would well serve its best interests.

The father is a man of much more moderate means, and yet of sufficient to provide for his child comfortably. He is engaged in business in a small way, out of which he gains a fair profit. He has, or had when the referee's report was made, no home of his own, living for the most part in boarding houses. His business is of such a nature that he is required to travel through the country a good deal, and sometimes for weeks at a time. His immediate family consists of his mother, now somewhat advanced in years, and a sister, who is engaged in a business pursuit which occupies all of her time, except in the evenings, so that the care of the child, if consigned to the custody of its father, would practically devolve upon his mother.

Notwithstanding the superior financial ability of the grandfather, we should hesitate to deprive the father of the custody of his child, if we were satisfied that he really bore for it the deep and sincere affection which he professes, and that it was the propulsion of that affection which leads him to prosecute this proceeding. We are not satisfied, however, upon these points. On the contrary, we are convinced that in insisting upon obtaining the legal custody of the child he is much more strongly moved by hatred for his deceased wife's relatives than by any deep and abiding affection for his wife's child. The testimony is replete with proof of his animosity towards and hatred of Edward Robitzek and his family, which, indeed, the relator does not seek to conceal. His relations towards his wife were marked with cruelty and indifference, to such an extent that, when warned that his wife lay at the point of death and that to take her child from her would have an injurious effect, he wrote:

"I don't care a rap whether you claim Rose is dying or not. It does not matter to me."

The relator and his wife married on April 17, 1907, and their child was born in June, 1909. The mother, during her married life, suffered from a number of diseases, culminating in tuberculosis, of which she died in the home of her parents in April, 1911. The relator and his wife lived together, very unhappily, until May, 1910, when Mrs. Meyer left her husband and went back to her parents' home. Her baby was brought there to her in June, 1910, and thereafter remained with her until her death. On October 14, 1910, Meyer and his wife executed articles of separation, wherein, among other things, the sole custody and control of the infant daughter, without any interference on the part of the father, was given to the mother. The evidences of Meyer's lack of consideration and affection for his wife are numerous, and it would be wearisome to recount them. The most glaring and significant, perhaps, is the fact that when, as he knew, his wife was about to undergo a very serious and critical operation, he refused to stay by her side, but started off a day or two before it was to take place upon a business trip, which, from all that appears, could have been postponed without loss or inconvenience. After his wife died, he refused to attend her funeral, although he was duly notified, and could easily have come, and he threatened to have her body exhumed in order to cremate it, although he knew that cremation had been abhorrent to his wife, and was abhorrent to her surviving relatives. Mrs. Meyer left a will, by which she undertook to commit the custody of her child to her mother, and a codicil, executed shortly before her death, which speaks eloquently, as of a voice from the grave, of her husband's treatment of her, and expresses the wish that he should not be permitted to have her body after death.

We find it impossible to believe that a husband who displayed towards his wife, during her lifetime, such heartless indifference as the petitioner displayed, can entertain for her offspring so profound an affection as the relator expresses, or as would insure to that offspring the tender parental care which is essential to the welfare of so young a child. That he has prosecuted this proceeding with vigor and at large expense does not convince us of the depth of his affection, for a quite sufficient incentive is to be found in his hatred of his wife's relatives. We are therefore clearly of the opinion that the interests of the infant will be best served if its custody be awarded to its maternal grandfather, Edward Robitzek, and his daughter Hazel, jointly, with leave to the father to visit and see the child on one day in each week, the particular day to be fixed by the order to be entered hereon.

The order appealed from will therefore be modified accordingly, with $10 costs and disbursements to the appellant respondent, Edward Robitzek. Settle order on notice.

INGRAHAM, P. J., and CLARKE, J., concur.

DOWLING, J. (dissenting). The general rule relative to the custody of children, and amply sustained by authority, is laid down in Cyc., vol. 29, page 1590, as follows:

"A parent who is of good character and a proper person to have the custody of the child, and reasonably able to provide for it, is entitled to the

custody as against other persons, although such others are much attached to the child, and the child is attached to them and prefers to remain with them, and they are in all respects suitable to have the custody of the child and able to support and care for it, and even though they are of larger fortune or able to provide for the child more comfortably than the parent, or to care for it better or to give it a better education than the parent can afford. This rule has been applied in favor of a father as against a maternal grandparent, a maternal aunt, a paternal aunt, and a statutory or official guardian, and in favor of a mother as against paternal grandparents, and a maternal grandmother, uncle, and aunt."

When the rule thus enunciated is to be departed from, it can only be justified upon the ground that the welfare of the child requires that a different disposition should be made of its custody. In inquiring as to what course is best to follow for the child's welfare, the question is not one of the financial condition of the parent or of the third party; but the solicitude of the court is to be exercised in procuring for the child such custody as will insure its upbringing under proper influences, amid proper surroundings, and with due regard to its mental, physical, and moral development. In the case at bar every one of these elements, as has been disclosed by the testimony, will be fully protected if the child is left in her father's care. He is a business man of high character and proved integrity, who earns an income sufficient to provide for himself and for his child, with due regard for her comfort. Despite the evident animosity displayed towards him on the part of his wife's relatives, the only question which has been raised as to his conduct towards his child has been upon hearsay evidence that once he struck the child. The learned referee, before whom the voluminous testimony in this case was taken, has found that during the greater part of his married life, the relator treated his wife in a tyrannical and insulting way, and acted in the same way towards his father-in-law and the members of the latter's family. It is quite true that there is evidence in the record, denied, however, by the relator, which, if true, would show acts of heartless conduct on his part towards his wife during her long period of illness; but we are not now concerned with the trial of an action for separation based upon charges of cruelty, and the testimony even as to these acts is based largely upon statements of the deceased wife, whose view of her husband's conduct towards her may have been colored by her own depressed condition, due to her illness and to her advocacy of the cause of her family as against that of her husband. But even if the relator did act heartlessly towards his wife, that furnishes no reason why he should be deprived of the society of his child (as against whom he is not charged with having committed any such acts), nor why he should not be allowed to bring her up in a manner befitting her station in life. It is conceded by the respondent that the father is by law entitled to the custody of the child, provided he is a fit person, and provided the court finds that such disposition is for the benefit of the infant.

I can find no suggestion in this record for any reason for bringing this case within the exception, save for the reason, already assigned, that the relator was cruel towards his wife and lacked in consideration for her, and for the further reason that his father-in-law is richer than he is. It is quite true that the father-in-law has made provision for

the child by his will, but that provision is revocable at his pleasure, and I should be inclined to attach more importance to his intentions for the future if he had shown some disposition to confer financial advantage upon the child in the past. There is nothing in the testimony to show that the child will be better cared for in another household than in the father's own. The fact that the child has been heretofore living under the care of his sister-in-law was due to the separation of the relator and his wife under conditions which it is unnecessary now to recite. Where the surviving parent is a man of unimpeached character, attached to his child, and able and willing to provide a home for her, amid proper surroundings and with proper opportunities for her training and education, I can see no reason for depriving him of such custody because another relative happens to be in more affluent circumstances than he. A child should not be encouraged in expecting to be brought up amid more luxurious surroundings than those to which the means of her father entitle her; and it would be, in my opinion, no act of kindness to her, nor would it insure her a happier future, to remove her from the parental control to that of another, whose claim is based on superior financial means.

I am therefore in favor of modifying the order appealed from, so that, while the child shall remain in the custody of the father, there shall be no privilege given to the grandfather or his daughter to take the child to their home once a month for six days, or for any other time, but they shall have the right to visit said child at her father's home for four hours on the last Saturday of each month.

LAUGHLIN, J., concurs.