THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN ELMER CONVERSE, Relator, *v.* JOHN L. DERRICK, as Commissioner of Welfare of Orleans County, and JULIA M. TAYLOR, Individually and as Orleans County Children's Agent, Respondents.

Supreme Court, Orleans County, January 4, 1933.

*Church & Church* [*Sanford T. Church* of counsel], for the relator.

*William H. Munson, District Attorney*, and *Frederic M. Thompson*, for the respondents.

HARRIS, J. Pursuant to a writ of this court the body of this infant was brought before me at a term of the Supreme Court

held in the county of Orleans on the 26th day of October, 1932, and proof was then and there made on the issues raised by such writ and the returns of the respondents thereto.

On the death of the wife of the relator and the mother of the infant child herein described, and at a time when such infant was approximately five months of age, at the request of the relator, the above-named children's agent of Orleans county took such child into her custody so as to temporarily provide for such child a proper home and medical treatment which was necessary on account of the poor health of such child. At the time of the placing of the child with such children's agent, the father's home was not a proper place for the care of such child. First the child was placed at the expense of the county in a private home in Medina, Orleans county, later was taken to the Children's Hospital at Buffalo for a lengthy period of care and treatment, and in the early spring of 1930 was placed as a boarder by such children's agent in the home of a family named Rath at Kendall, Orleans county, where such child was kept until August 18, 1932. During this period Orleans county and its agents expended on such child for board, hospital and medical care approximately $850, toward which the father contributed not more than $77, although on his statement, during the period of the child's care by the county, he had an earning capacity of some seven dollars a day.

In June, 1932, a proceeding was instituted in the Children's Court of Orleans county and testimony was taken in such proceeding. After hearing such testimony, the judge of the Orleans County Children's Court, on the 8th day of June, 1932, made an order which " Ordered, adjudged and decreed that said Harlowe Converse is a dependent child; and it is further ordered, adjudged and decreed that the said child be committed to the custody of the Commissioner of Public Welfare of Orleans County, until the further order of this court." Subsequently thereto and on the 9th day of June, 1932, the relator herein executed and acknowledged an instrument which is as follows:

" SURRENDER

" NEW YORK, *June* 9, 1932.

" Name of Child: Harlow Francis Converse

" Birthday: September 30, 1929

" Birthplace: Kendall, N. Y.

" This certifies that I, John Elmer Converse, residing at Barre, New York, am the father of the child, Harlow Francis Converse, aged 2 yrs. 8 mos., and the child is indigent, destitute and homeless. Feeling that the welfare of the said child will be promoted by placing

it in a good home, I do hereby voluntarily and unconditionally surrender it to the care and custody of the Commissioner of Public Welfare, Orleans County, with the understanding that said Commissioner is to provide it with a home in the United States until it shall reach the age of            years, unless prevented from doing so by some physical or moral disease, by the gross misconduct of the child or by its leaving the place provided for it without the knowledge or consent of the said Commissioner of Public Welfare Orleans County, and I pledge myself not to interfere with the custody or management of the said child in any way, or encourage or allow any one else to do so, and I hereby expressly authorize and empower the said Commissioner of Public Welfare, Orleans County, to consent to the adoption of said child, in the same manner and without notice to me as if I personally gave such consent at time of such adoption.

" Signature:   JOHN ELMER CONVERSE.

" Witness: CATHERINE MATHEWS."

Subsequent to the execution and acknowledgment of this instrument of surrender, the respondents herein sent such infant child to an institution in New York city for the purpose of placing such child for adoption.   While such infant was in such institution in New York city and on or about the 20th day of August, 1932, the relator served on the respondents herein a purported revocation of the instrument of surrender dated June 9, 1932, and demanded from such respondents the return of the child to his custody.   Such return was refused by the respondents and the relator instituted these proceedings.

The relator in these proceedings claims as follows: (1) That he is a proper guardian and custodian for the child; (2) that the Children's Court of Orleans county had no right nor jurisdiction to make the order of June 8, 1932, committing the child to the care of the children's agent of that county; (3) that the period of custody to be placed in the form of surrender of June 9, 1932, is indefinite in that there is left blank in such surrender form a statement of the period of time during which the custody of such infant by the commissioner of public welfare of Orleans county would continue; (4) that his purported revocation of such surrender terminates the custody of the commissioner of welfare of Orleans county; (5) that the surrender of June 9, 1932, was obtained from him by means of duress.

In reference to the claim of duress in securing such surrender, the court is well satisfied that the instrument was executed and acknowledged as the free act of the relator and with his then desire

to avoid the custody of such child and the consequent expense to him of such custody.

The attack made by the relator herein on the order of the Children's Court of June 8, 1932, arises from the fact that such order decreed that the child was a " dependent " child. The relator claims that the Children's Court Act does not provide for the jurisdiction by the Children's Court of " dependent " children. It is true that the act does not so provide in so many words and there may be a question as to whether the Legislature intended by other verbiage that it should so provide. Section 18 of article 6 of the Constitution of the State of New York, which is the basic authority for the establishment and jurisdiction of Children's Courts, provides that " the legislature may establish children's courts   *   *   *   and may confer upon them such jurisdiction as may be necessary for the correction, protection, guardianship and disposition of delinquent, neglected or dependent minors."

The Children's Court Act, amended by the Legislature by chapter 393 of the Laws of 1930, defines " delinquent " child, " neglected " child, " abandoned " child and " destitute " child but does not define " dependent " child. The definitions given in the Children's Court Act as to the terms above mentioned which it does define are the same as the definitions contained in section 300 of the State Charities Law (Laws of 1930, chap. 590). Such State Charities Law does separately define " dependent " child. Section 6 of the Children's Court Act (as amd. by Laws of 1930, chap. 393), which covers the jurisdiction of the Children's Courts, gives to the Children's Courts " exclusive original jurisdiction of all cases or proceedings involving (a) the hearing, probation, remand, commitment or disposition of children actually or apparently under the age of sixteen years, or who were under sixteen years of age when the act or offense is alleged to have been committed, for any violation of law; (b) juvenile delinquency; (c) children who are material witnesses, as provided by law; (d) children who are mental defectives, as provided by law; (e) children who are physically handicapped but the children's court of any county or city whether established under the children's court act or under any special act, shall have jurisdiction over all physically handicapped minors sixteen years of age and over only for the purpose of administering relative to their education, physical care and treatment pursuant to section twenty-four of the children's court act; (f) improper guardianship and (g) neglected and abandoned children, as provided herein," but says nothing in reference to " dependent " children. Either the Legislature felt that provision for these other groups of children for the protection of whom it was necessary to give jurisdiction to the

Children's Court would, by inference, include "dependent" children or it did not intend to include "dependent" children as coming under the jurisdiction of the Children's Court.

In passing, it may be noted that the Children's Court could have committed such child as one "physically handicapped" or one having "improper guardianship" or one "neglected." Attention is particularly drawn to this phase of the history of this matter as it may be of value in the commitment of other children or to the Legislature in making provision definitely for jurisdiction by the Children's Court of "dependent" children. However, so far as these proceedings and the child interested in the same are concerned, the order of the Children's Court of Orleans county of June 8, 1932, ceased to be of any effect on the making and acknowledgment of the instrument of surrender dated June 9, 1932, as clearly such instrument of surrender was to supplant the order of the court dated June 8, 1932.

We now come to the discussion of the value and effect of such instrument of surrender and the purported revocation thereof. As has been indicated before, the relator apparently relies upon his claim of duress as a means of voiding such surrender and of sustaining his attempt of revocation of such surrender, but this court cannot, in good conscience, on the testimony herein, find that there was any duress in relation to the signature of such surrender. Further, to sustain his claim that he may revoke such surrender of June 9, 1932, the relator, as has been said before, relies upon the blank in relation to time in the form of such surrender. By reading such instrument as a whole and considering its language, "unconditionally surrender;" "I pledge myself not to interfere with the custody or management of the said child in any way;" "I hereby expressly authorize and empower the said Commissioner of Public Welfare, Orleans County, to consent to the adoption of said child * * * without notice to me," this court must come to the conclusion that such surrender was absolute and unlimited as to the father giving up the custody of the child to the commissioner.

However, more important than the questions hereinbefore discussed is the question that must control this court in a proceeding brought to determine the custody of a minor, i. e., the question of the welfare of that minor. The State of New York stands in relation of *parens patriæ* to minor children in the State, and representing the State, it is the function of the Supreme Court to determine the custody of such minors, and such determination is to be based solely on the welfare of the minors. This power of the State and function of the Supreme Court evidently transcends legislative

action and contract between individuals. (*Weinberger* v. *Van Hessen,* 260 N. Y. 294 [see *People* v. *Lewis,* 260 id. 171]; *Finlay* v. *Finlay,* 240 id. 429; *Matter of Cole,* 212 App. Div. 427; *Middleworth* v. *Ordway,* 191 N. Y. 404.) This office of the Supreme Court descends from King to Chancery and from Chancery to the Supreme Court of this State. Born in a time when the question of custody could be changed on the misbehavior of parents or of guardians chosen by parents, this power must still be available even in these days of social service organizations and welfare officers so that errors of heart or errors of judgment on the part of officials, as well as misbehavior by parents and by guardians can be remedied by the court. Such errors and such misbehavior, though seldom present in the care of a child, must necessarily occur so long as human nature remains in its present state.

With this thought in mind, the question of surrender becomes unimportant if the welfare of the child requires that its custody be given to others than the commissioner to whom the surrender was made. The courts of Colorado have been so jealous of this right that a surrender has been set aside because it was not acknowledged (*People* v. *Bolton,* 27 Col. App. 39, 146 Pac. 489), while in this State the courts have sustained surrenders made not even in written form (*Matter of Davis,* 142 Misc. 681) and have indicated that formal surrenders should not interfere with the welfare of the child (*People ex rel. Rich* v. *Lackey,* 139 Misc. 42). In all of these cases and many others of similar topic, one is impressed with the thought that in functioning for the *parens patriæ,* there is no limitation on the action of the court except that of considering the welfare of the minor child. With this in mind, there occurs briefly the effect upon the court of the testimony given on this proceeding. The relator now seeking the return of the custody of the minor child showed that his previous life, training and habits were such that a child of the tender years of the one who is the subject of these proceedings could not find a fit home or care with such father; in fact, the relator finally admitted that he did not desire the custody of the child but was bringing this proceeding in order that he could turn over the custody of the child to Mr. and Mrs. Rath with whom the child had been previously boarded by the children's agent of Orleans county. Apparently, Mrs. Rath is very much attached to this child, but the court must agree with the viewpoint of the authorities of Orleans county in reference to Mr. and Mrs. Rath that the extreme youth of the child and the fairly advanced age of Mr. and Mrs. Rath would make doubtful the future of the minor child if it were committed to Mr. and Mrs. Rath. The court is further of the opinion that the agency through which the commissioner of welfare of

Orleans county is endeavoring to secure the adoption of the minor child can and will secure for such minor child a home of adoption which will be a proper one for such child.

With these thoughts and conclusions in mind, it becomes the duty of this court, for the welfare of such child, to dismiss these proceedings and to leave the custody of the child in the commissioner of welfare of Orleans county, for the purpose of such commissioner placing such child for adoption in a fit home.