In the Matter of the Application of ANNA PRESLER, as Guardian ad Litem of GERTRUDE McDERMOTT, Petitioner, for a Writ of Habeas Corpus to Bring up the Body of CARL McDERMOTT, an Infant, for the Purpose of Awarding the Custody of Said Infant.

Supreme Court, Special Term, Chemung County, June 20, 1939.

*Casson, Hoover & Stein,* for the petitioner.

*George G. Reynolds, Corporation Counsel,* for Ralph D. Klebes, commissioner of public welfare of the city of Elmira, Respondent.

*John P. Broomell, amicus curiæ.*

PERSONIUS, J. On January 18, 1937, Carl McDermott, here referred to as the "child," was born to the petitioner, Gertrude McDermott, here referred to as the "mother." She was then about fourteen years of age. She petitions by a guardian *ad litem.* The petition alleges that the child is wrongfully restrained by the respondent, commissioner of public welfare of the city of Elmira.

The return alleges that the respondent commissioner holds custody of said child by virtue of a written instrument of surrender executed by the mother March 25, 1937, pursuant to section 308. (All statutory references are to the State Charities Law unless otherwise indicated.)

The mother contends that said instrument is void because she was an infant when she executed it. There is no dispute of fact. It appears by the petition, return and concessions at the hearing that the child was born in the Salvation Army Home at Buffalo January 18, 1937, and returned to Elmira with his mother; that on March 22, 1937, she was committed to the New York Training School for Girls at Hudson, from which school she was recently paroled; that pending her commitment and transfer, and on March 25, 1937, she signed the instrument in question. It recites that the child is indigent, destitute and homeless, provides that the mother voluntarily and unconditionally surrenders him to the respondent, who is to provide the child with a home during infancy and is empowered to give the child in adoption.

The child having been born out of lawful wedlock, the instrument of surrender was signed by the mother only. (State Charities

Law, § 308, subd. 3.) There is no claim of fraud or duress in its execution.

That an infant may avoid a release of property rights or an unexecuted contract must be conceded. (*International Text Book Co.* v. *Connelly*, 206 N. Y. 188.) However, the Legislature may endow infants with the right to make any contracts otherwise lawful. (*Scott* v. *Nashville Bridge Co.*, 143 Tenn. 86; 223 S. W. 844, 854.) It may remove the disability of a minor to contract. (*Naudzius* v. *Lahr*, 253 Mich. 216; 234 N. W. 581, 583.) This is not disputed. It has exercised this power in several instances. When it sought to extend to infants some authority to contract which was already enjoyed by adults, it, naturally, expressly mentioned infants. It was dealing with the disability of infants only. (Banking Law, § 310, subd. 2; Workmen's Comp. Law, § 25, last paragraph; Neg. Inst. Law, § 41.) But when, as here, it sought to grant some authority or power which previously was not enjoyed by either adults or infants, it did so in general terms without differentiating. (Vehicle & Traffic Law, § 52; *Gesell* v. *Wells*, 229 App. Div. 11; affd., 254 N. Y. 604; Dom. Rel. Law, § 111; Pers. Prop. Law, §§ 105, 169; *Casey* v. *Kastel*, 237 N. Y. 305, 311, 312.)

We think section 308 is within the latter group. We hold that by said section the Legislature intended to and did authorize and empower infant as well as adult parents and mothers to execute the instrument provided for therein. It follows that the instrument in question is neither void nor voidable as to this mother. *Said section does not differentiate between adult and infant parents.* It provides that the custody of a destitute or dependent child may be committed to an authorized agency by the " parents," by one of the " parents," or (subd. 3) by the " mother." There is naught in the section or in the entire article 16 to indicate that the Legislature intended only adult parents or an adult mother. " The statute has no saving clause for persons (infants) laboring under disability * * *. Where the statute makes no exception the court * * * can make none on the ground of any inherent equity applicable to infants." (*Demarest* v. *Wynkoop*, 3 Johns. Ch. 129, 146, 147; Tyler on Infancy and Coverture, 145.)

Corroboration of such legislative intent is found in other provisions of the statutes. Only females under sixteen years of age can be committed to the New York Training School for Girls (State Charities Law, § 188, formerly § 196.) Under section 190 thereof the superintendent may place for adoption a child of an inmate " with the consent of its mother." Such mother must necessarily be an infant. Article VII of the Domestic Relations Law provides for the adoption of infants. By section 110 thereof

it differentiates between adults and infants who may adopt, that is, become the foster parent or parents. It does not so differentiate in section 111 which specifies the consents necessary to the adoption. By that section " parents," or the " mother " of a child born out of wedlock, may so consent. In failing to make any distinction between the acts of an infant or adult parent, the Legislature must have intended that there should be none.

The attorney for the respondent argues by comparison with section 51 of the Domestic Relations Law. It gives a married woman power and authority over her property. In other words, it removes her common-law disability of coverture. As to an infant married woman it was held that the statute did not remove the disability of infancy. But in enacting section 51 the Legislature had in mind the removal of the disability of coverture only, not the disability of infancy. " The statute which makes valid the deed of a *feme covert* * * * was never intended to sanction or validate a conveyance by an infant wife. There is a plain and obvious distinction between the disability of coverture and that of infancy." (*Sandford* v. *McLean*, 3 Paige, 117, 121.)

Respondent also argues that the instrument in question is, by its very nature, not a " contract " which an infant can avoid; that, as the mother was under *legal obligation* to support her child, she could, though an infant, legally contract therefor (*People* v. *Moores*, 4 Den. 518); that a parent, adult or infant, may forfeit his or her right to the custody of a child by abandonment, failing to provide, etc. We do not pass on these questions, preferring to base our decision on our holding that, by section 308, the Legislature authorized the surrender and commitment of a child to an authorized agency, not only by an adult but by an infant, and, for the latter purpose, to remove the disability of an infant to execute the required instrument. In holding this, we have not overlooked the Opinions of the Attorney-General (1923), page 348. With it, however, we cannot agree.

For the reasons above expressed, the writ must be denied.

We think it should be denied for another reason. From birth an infant is a ward of the State. It stands in the relation of *parens patriæ*. In this and similar proceedings the fundamental consideration is the welfare of the infant. (*People ex rel. Converse* v. *Derrick*, 146 Misc. 73, 77, 78.) The infant's welfare is paramount to the natural right of a parent. (*Matter of Bock* [*Breitung*], 280 N. Y. 349, 353.) It appears here that soon after the birth of this child, the mother then fourteen years of age, was committed to an institution from which she has but recently been paroled. The circumstances do not indicate that the welfare of this infant would be

promoted by removing him from the custody and care of the respondent, which would automatically place him in the custody and care of the mother, now about sixteen years of age and apparently without any means of supporting the child. (*People ex rel. Converse* v. *Derrick*, 146 Misc. 73, 77, 78.)

If the instrument in question cannot be avoided, we are forbidden to restore the custody of the child to the mother. (§ 307.)

Submit order denying the writ.