THE PEOPLE OF THE STATE OF NEW YORK ex rel. BIRDIE S. STERNBERGER, Appellant, v. LOUIS STERNBERGER and Others, Respondents.

*Habeas corpus — when a woman is living in a "state of separation" — custody of minor children — fitness of the mother — improper conduct of the father.*

In order to maintain a proceeding under 2 Revised Statutes (148, §§ 1, 2 and 3), providing that where a husband and wife live in a "state of separation," without being divorced, the wife may apply to the Supreme Court for a writ of habeas corpus to have any minor child of the marriage brought before it, and thereupon the court may award the custody of such child to her, it is not necessary that the separation be the result of an arrangement or treaty between the parties, placing them in the position of assenting to such "state of separation."

In order to warrant the court in exercising the purely discretionary power conferred by such provisions of the statute, it must be shown that the wife had good and substantial grounds for leaving her husband, but it is not necessary that such grounds be sufficient to enable her to obtain a decree of divorce from him.

Where, upon the hearing of such a proceeding, it appears that the wife was morally justified in leaving her husband; that she is a woman of refinement and

education, is personally and pecuniarily competent to take charge of her children, who are of tender years, one a boy of delicate health and the other a girl; that she is deeply interested in their welfare, then a case is presented which justifies the court in awarding to the wife the custody of the children.

APPEAL by the relator, Birdie S. Sternberger, from an order of the Supreme Court, made at the New York Special Term in a habeas corpus proceeding and entered in the office of the clerk of the county of New York on the 7th day of July, 1896, denying the relator's motion to confirm the report of a referee which awarded to the relator the custody of her children, and restoring the said children to the care and control of their father, Louis Sternberger.

*Joseph H. Choate,* for the appellant.

*George Zabriskie,* for the respondents.

PATTERSON, J. :

The relator in this proceeding is the wife of the respondent, Louis Sternberger. Since November, 1895, they have lived apart, the wife having then separated from her husband by withdrawing from his home and taking up her abode at the house of her father. There are two children of the marriage of the relator and her husband ; one a girl, now in her eighth, and the other a boy, now in his seventh year. The relator, on leaving her husband's house, took both children with her. On the 18th of November, 1895, the respondent, Louis Sternberger, took his son into his own custody and away from the mother, who thereupon began this proceeding, in which, although in the beginning directly relating to the son only, it is agreed that the court shall determine to which of the parents the custody of both children shall be committed, they in the meantime, and by arrangement of the parties, remaining with their mother. The proceeding was initiated by the relator obtaining a writ of habeas corpus under the provisions of 2 Revised Statutes, 148 (§§ 1, 2 and 3), by which it is enacted that "when any husband and wife shall live in a state of separation, without being divorced, and shall have any minor child of the marriage, the wife (by the 'Domestic Relations Law' of 1896 [Chap. 272, § 40], passed after this proceeding was begun, the provision is extended to the husband also), if she be an inhabitant of this State, may apply to the Supreme

Court for a habeas corpus to have such minor child brought before it," whereupon "the court, on due consideration, may award the charge and custody of the child so brought before it to the mother, for such time, under such regulations and restrictions, and with such provisions and directions as the case may require," and "at any time after the making of such order the Supreme Court may annul, vary or modify the same."

This law has stood upon the statute book for nearly seventy years, and its provisions have been invoked quite frequently by wives living apart from their husbands and seeking judicial sanction for the custody and control of their infant children. In none of the reported cases has any question ever been raised requiring an interpretation of the words living "in a state of separation," as those words are used in this statute. But now for the first time it is earnestly argued that the remedy afforded by this enactment is not open to a wife unless her separation from her husband without a divorce is one resulting from some arrangement or treaty placing the parties in the situation of assenting to a "state" recognized by law, and technically defined and established. No authority is cited to support that novel and strained construction. The statute deals with a condition and with a condition alone. It takes the parties as it finds them — husband and wife living separated, without a judicial decree either of absolute or what is sometimes called limited divorce. Its evident original purpose was to give a wife so situated a remedy which theretofore she did not have. It does not confer an absolute right, but a mere remedy by means of which she can seek the aid of the court in the exercise of its purely discretionary power to confide to her, for her child's welfare, the temporary charge and custody of that child, in curtailment of what was then regarded to be, and doubtless was, the common-law right of the father to the possession of the persons of his minor children. The learned and discriminating judge who wrote for the court in the case of *The People* v. *Brooks* (35 Barb. 89) has well said "this statute does not declare on what grounds the court shall proceed, but confides the whole matter to its discretion, and hence the occasion, cause and circumstances of the separation and the relative merits and demerits of the parties may be taken into account." If the separation must result from agreement what need can there be of investigating the causes of the

separation? There would be what Judge COWEN considered "a kind of divorce which the courts cannot very well gainsay at this day." (*People* v. *Mercein*, 3 Hill, 411.) It would suffice that the parties had willed it to be so, and the question of the relative fitness of the parents would alone remain to be determined in connection with that of the welfare of the child. In none of the cases has it ever been intimated that the separation must be an agreed one, and in none of them has the writ been refused on the petition of the wife who has left her husband without his consent, but upon provocation and for some reasonable cause. The strongest advocates of the right of the husband have never suggested such an interpretation of the statute. Judge NELSON, in *The People ex rel. Nickerson* v. —————— (19 Wend. 16), commenting on the statute, expresses a doubt, applying only to its intention " where the wife withdraws from the protection of the husband and lives separate from him *without any reasonable excuse*" and declares that the court should not award the custody of children to a mother who. "had willfully and *without pretense of excuse* abandoned her family and the protection of her husband," and he admits that "ill-usage" of the wife *or consent* would entitle the wife to the favorable judgment of the court. The general deduction to be drawn from all the cases is that the court acts upon the *fact* of separation, but requires that the petitioning wife shall show meritorious cause for leaving her husband, and when that is shown the foundation is laid for the exercise of the delicate discretionary duty imposed upon the Supreme Court by the statute.

It is further urged that in the disclosure of merits connected with the wife separating herself from her husband, a case must be made out sufficiently strong to authorize a decree for some one of the causes mentioned in the statute relating to divorces. The learned judge in the court below adopted that view and said in his opinion : "If the facts in the case would not warrant the court in granting her a separation, I do not think that they are sufficient to warrant her to take her husband's children from his house." This limitation upon the operation of the statute reads into it a condition, not only foreign to its purpose, but entirely at variance with that purpose. It would here compel the petitioning wife to present to the

court all such convincing proofs as would be strictly required to make out a case for separation; that is to say, to show that she is entitled to a decree which, in a formal action, the court would be compelled to make, whereas, in the particular proceeding by habeas corpus, the action of the court is to be purely discretionary upon the same state of facts. The construction contended for would make the statute read, that the wife, living in a state of separation without a divorce, may apply for the writ on showing that she is entitled to a divorce. The nature of the power conferred upon the court, the fact that it is discretionary and does not compel the court to act otherwise than in its judicial discretion, the superadded consideration that that discretionary action *relates merely to the temporary custody of the children*, that it is subject to be annulled or vacated, or modified at any time, all go to show that the court is to deal with proceedings of this character upon evidence directed to establish that, for the benefit and welfare of the children, their custody may be for a time committed to a wife living separate from her husband under such circumstances as furnish some reasonable ground for her refusal to continue to live with him. This view of the subject finds support in authority. (*Davis* v. *Davis*, 75 N. Y. 221.) That was an action brought by a wife for a limited divorce under the statute. She was defeated in the action, notwithstanding which the justice at Special Term awarded her the custody of her children. That part of the decree was reversed in the Court of Appeals, it being held that the Supreme Court had no jurisdiction to determine the matter of the custody of the children in that action. Thus the question concerning the mother's control of the children was directly involved, and the court, after referring to the sections of the Revised Statutes upon which this proceeding is based, said: " The remedy by habeas corpus is open to the plaintiff, and she may, by a direct proceeding, have the right to the custody of the children determined as between herself and her husband; but the existence of this remedy does not tend to show that the custody may be adjudged to her in the action for separation, after having failed in the very foundation of her action." That was a case in which such facts were not shown as would entitle the plaintiff to a decree, notwithstanding which the court held that the writ of habeas corpus was open to her, and that in a direct proceeding she might have her

remedy, even in the face of a solemn and final adjudication that she was not entitled to a decree of limited divorce.

We are, therefore, of the opinion that it is not necessary that this petitioner must go to the extent of showing herself entitled to a divorce *a mensa et thoro*, before she may receive the benefit of the discretionary power of the court under the terms of the statute, but at the same time that power should not be exercised in favor of the wife, unless she shows something real and substantial to justify her conduct in leaving her husband. This view is directly associated with the fitness of the mother to have the control and charge of the infant children. As was said in *Mercein* v. *The People* (25 Wend. 74), in settling the question of custody, the causes which have led to the separation affect personal character " and touch the qualifications of the parties for the proper exercise of the parental office." If the mother has wantonly and without excuse or reasonable cause deserted her husband and broken up his home, it would be a grievous injustice to reward her for the violation of her duty by giving her the possession and control of the children. While the prime consideration is the benefit of the children, no court could consider that their welfare would be conserved by intrusting them to a woman who had so little, either of good feeling or judgment, or conscience, as that. We think that the remedy sought in proceedings of this character may be furnished to a wife under the statute, when it appears to the court that she is living separate and apart from her husband for some good and substantial reason which justifies her morally in the course she has pursued, although that reason may not be sufficient as a basis for a decree of divorce, always provided the wife is a fit and proper person, having the means and ability properly to support and educate the children, and that the court is satisfied that it will be for the best interest and welfare of such children that they shall remain temporarily with their mother.

These general considerations having been stated, they must be applied to the facts of this case as they are developed upon the record before us.

The relator's petition was filed in December, 1895. It sets forth her marriage with Louis Sternberger; that they were living, at the time the writ was filed, in a state of separation without being divorced, and that the relator was an inhabitant of the State; that

there were two children of the marriage above referred to, and the ages of the children; that the son was prematurely born, was in delicate health, was slow in development and required the mother's care; that she was qualified both as to personal fitness and pecuniary ability to support the children; that her husband was without means to enable him to provide for them; that he was an unfit person to have their care and custody; that he was of violent and uncontrollable temper, and in his conduct towards her for some period of time, had been coarse, brutal, insulting, profane and grossly obscene, and had furnished just and reasonable cause for her withdrawing from all association with him, which she did early in November, 1895. The return to the writ contains a denial of all the material allegations of the petition and sets forth that the relator is an unfit person to have the charge of the children. To that return a traverse was filed reasserting the matters alleged in the petition and denying the relator's unfitness.

When the matter came on to be heard, the court made an order directing a reference to take proof upon two questions, namely: *First.* Is the mother a proper person to have the care and custody of the children? *Second.* Is the father a proper person to have the care and custody of the children? The referee was also directed to report the evidence taken by him on those questions, together with his opinion as to what disposition of the care and custody of the two children would best conserve their interests.

After a protracted hearing the referee made his report, in which he found that the mother was a proper person to have the care and custody of the children; that the father was an improper person to have such care and custody, and he was of the opinion that it was to the best interest and welfare of such children that they should be left in the custody of their mother. Upon the coming in of that report, an application was made to the court to confirm the findings of the referee, which motion was denied and an order was made committing the custody of the children to the respondent, and from that order this appeal is taken.

We agree with the finding of the referee that the mother is a fit and proper person to have the care and custody of the children. It is shown that she is a woman of education, refinement, strong maternal feeling, deeply interested in the welfare of her children,

competent in every way to take care of and provide for them and to surround them with such influences as will tend to promote their physical health and their moral and mental welfare. But we do not agree in a complete condemnation of the respondent as a person altogether unfit under any circumstances to have the custody and control of these children; and that is the impression one might get from the referee's estimate of their father. The case must be examined with reference to the situation of the parties and the needs and best interest of the children under the unfortunate circumstances appearing by the record to have existed when the petition was filed. The evidence fails to satisfy us that the respondent, Louis Sternberger, is without character or is totally deficient in paternal affection or altogether regardless of the true interest and well-being of his children. There is no reason why he should be pilloried or stigmatized, greatly at fault as he has been in his conduct towards his wife, even to the extent of forfeiting his right to the continuous custody of his children. We concur in the referee's conclusion, that that custody should be temporarily taken from the father and confided to the mother. We are to dispose of this matter upon considerations affecting the welfare of the children, and to do that must have regard to the relative, real and not fancied advantages to be secured to them by providing for their custody and maintenance. We consider it to be satisfactorily established that it is much better for them to remain at the present time with their mother than with their father, and that consideration arises from the proven fitness of the mother to take charge and control of them; their tender years, the delicate condition of the boy, the necessity that exists for the girl having maternal care and guidance; the fact that the mother has not deprived herself by any act of conduct of hers of the right to discharge her duty to the children, and that, notwithstanding the general good character of the father, he has so conducted himself in his relations with his wife that he has given her reasonable moral ground for leaving him and taking her children with her.

It would be neither instructive nor advantageous in any way to refer with minuteness to the testimony upon which we reach this determination, a course which might gratify the pruriency of the curious, but would be of no benefit to the parties interested. It is

necessary, however, that we advert in a very general way to some of the facts which induce the conclusion at which we have arrived.

From the date of the marriage of these parties, in April, 1888, until the autumn of 1890, they lived with and formed part of the family and household of the relator's father. Both of their children were born under that father's roof; the strongest affection and love existed between the relator and her father, and the evidence discloses that the respondent, Louis Sternberger, entertained for his father the same sentiment of devoted filial attachment. The relator and her husband appear to have lived harmoniously together until some time in the year 1889 or 1890, when unkind feelings arose in consequence of circumstances not necessary to mention. The principal and most efficient cause of the ultimate estrangement of the wife from her husband was undoubtedly the financial differences between the respondent and the relator's father, differences which may have arisen originally from honest misunderstanding, but which resulted in intense bitterness of feeling and profound enmity between the father-in-law and the son-in-law. Out of that enmity grew a series of acts, insulting, irritating, unjust and harsh beyond endurance, on the part of the respondent to his wife, who was made to bear the brunt of his intense hostility to her father, manifested by passionate outbreaks of ill-temper, by disparaging and contemptuous and malevolent remarks concerning her father and her mother, carried as far as an expression of deep regret that he had not the courage to kill that father; by scenes of violence and misconduct, such as a self-respecting and sensitive woman could only regard with disgust and aversion. These exhibitions on the part of the respondent were entirely at variance with his ordinary and normal character and deportment as testified to by many witnesses. They evidently were the outgrowth of his financial troubles and misfortunes, acting upon a highly sensitive and excitable temperament — misfortunes which he attributed largely to his wife's father, and with which in his unreasonableness he associated her, upon the assumption that her sympathies were enlisted upon the side of her father and in hostility to her husband and his interest. That this was the origin of his active ill-treatment of his wife we think the testimony shows; that ill-treatment did not go to the extent of actual brutality or physical injury, but it was displayed in instances of a

demonstration of violence to his wife, of furious temper, of disregard of her feelings and even of her health, for it is shown that, when she was seriously and dangerously ill, a distressing scene of contention between her husband and father was forced upon her by her husband while she lay helpless in bed, and that, knowing the delicacy and fastidiousness of his wife, he offended her modesty and self-respect by using language and making remarks which she was not able to utter in speech before the referee, but for very shame was obliged to reduce to writing. The respondent denies with vehemence all these accusations, and especially the obscenities imputed to him, but the referee, having the advantage of seeing the parties when before him, has believed the wife, and upon the subject of obscene remarks, her statement finds corroboration in inherent probabilities. It is not conceivable that a delicately reared, refined, educated and pure woman could ever have imagined the substance, much less have formulated the expressions which she swore, and the referee believed, the respondent used in the matters referred to. That all this dissension and unhappiness constitutes a real grievance of the wife against her husband cannot be reasonably doubted. Her character and mental constitution are such that his conduct caused her abhorrence, and we cannot disregard in a case of this kind the mental and moral qualities of a woman so long as her action has not been prompted by mere caprice or wantonness or morbid self-love or vanity, or that spurious claim to superiority which some silly women assume to have over their husbands. There are degrees and very marked ones of ill-treatment. Indecencies and foulness of speech may constitute very gross ill-treatment. What would be a pleasantry to a Billingsgate fish-woman would be a mortal insult carrying with it a sense of the deepest degradation to a refined and cultivated lady as this relator appears to be, and she received such treatment. All the acts thus generally indicated, but not specifically dilated upon, reached their climax in the bathroom episode in November, 1895, and determined the relator to leave her husband. Under all these circumstances we feel justified in saying that she had some reasonable cause for withdrawing from her husband and taking her children with her. Forbearance and submission had ceased to be possible. The conviction that this is so, forces itself upon the mind of the unbiased, attentive and critical reader of this massive record, but running through it all

there is the suggestion that under different auspices and with different surroundings in the earlier days of their marriage, and with prosperity instead of that adversity which affected the husband as a deteriorating influence upon his character, other and different relations would have existed between these parties, notwithstanding the referee's view that the marriage was an ill-advised one. The separation seems to us to be due to the husband's want of proper regard for the feelings, attachments and nature of the wife, inspired largely by his misfortunes and his fancy of her disregard of him and his interests in his contest or differences with her father.

On the whole case, we think the interests of the children would be best conserved by permitting them to remain for the present with their mother. Only one really serious thing has been brought forward as impeaching her fitness, and it relates to occurrences antedating by some months the birth of the son, but they seem to be explained and no further allusion to them is required. We have omitted to refer, for reasons already indicated, to any of the testimony connected with the relator's interviews with either of her counsel, and to many of the various matters detailed in the evidence and upon which counsel have dwelt minutely in their briefs. They have not failed, however, to receive very careful consideration.

The order appealed from must be reversed and the motion for a final order confirming the report of the referee granted, awarding the custody of the children, until the further order of the court, to the relator, upon the conditions recommended by the referee in his report, and with costs and disbursements of the proceeding to be taxed.

Van Brunt, P. J., Barrett, Williams and O'Brien, JJ., concurred.

Order reversed, and motion for final order confirming referee's report granted, awarding the custody of the children until the further order of the court to the relator, upon the conditions recommended by the referee in his report, and with costs and disbursements of the proceeding to be taxed.