THE PEOPLE OF THE STATE OF NEW YORK ex rel. OUR LADY OF VICTORY INFANT HOME, Relator, *v.* ANGELO VENNIRO and Another, Respondents.

Supreme Court, Monroe County, December 14, 1925.

Infants — habeas corpus to obtain custody of infant child given defendants by relator — State Charities Law, § 303, does not bar Supreme Court from determining right of charitable agency to control custody of orphan children — relator gave child of English speaking parentage to defendants, Italians, under agreement defendants should not have permanent custody of said child except with relator's consent — welfare of child requires he be returned to relator by virtue of superior right under State Charities Law, § 303.

The Supreme Court is endowed with plenary power to control the custody of children toward whom the State stands in the relation of *parens patriæ*, and notwithstanding the fact that section 303 of the State Charities Law vests the custody of a child placed or boarded out and not legally adopted during his minority in an authorized charitable agency to whom the custody of said child has been committed under section 308 of the State Charities Law, said court has jurisdiction to inquire into the right of said agency to reclaim a child placed or boarded out.

Accordingly, upon the return of a writ of habeas corpus in which the relator, an authorized charitable agency under section 308 of the State Charities Law having the custody of orphan children, seeks to obtain the custody of a child of English speaking parentage given the defendants, Italians, with the understanding that said defendants should not have permanent custody of the child, except with the approval of the relator, after a trial had been made of the newly-established relation between the child and said defendants, the Supreme Court is not barred from determining whether the child should be returned to the relator, left with the defendants, or placed under other guardianship.

The relator having a superior claim to said child under section 303 of the State Charities Law, is entitled to have the child returned to it, in view of the conditions in defendants' home and in the interests of the child's welfare.

**136** People ex rel. Our Lady of Victory I. Home *v.* Venniro.

Supreme Court, December, 1925.                    [Vol. 126

Writ of habeas corpus to secure the custody of Herbert Anderson Payment.

*Michael A. Hogan* [*Stephen V. O'Gorman* of counsel], for the relator.

*Charles Lambiase* [*Anthony Miceli* of counsel], for the respondents.

Stephens, J.   The writ of habeas corpus was allowed in the above-entitled proceeding on July 3, 1925, returnable July eighth; a return was filed and several hearings were had and the matter was finally submitted November 5, 1925.

The issues raised by the petition and return to the writ could be decided upon the facts with but little discussion.   The relator, however, has challenged the power of the court to do otherwise than to restore the custody of the child to it, placing this claim upon the provisions of section 303 of the State Charities Law (added by Laws of 1923, chap. 706, as amd. by Laws of 1924, chap. 437).

The said section provides, among other things, that " the custody of a child placed out or boarded out and not legally adopted or for whom legal guardianship has not been granted shall be vested during his minority in the authorized agency placing out or boarding out such child and any such authorized agency may in its discretion remove such child from the home where placed or boarded."   The relator is an authorized agency; it placed the child with the defendants; the child has not been legally adopted, and no legal guardianship has been granted for him; and it is argued, these facts having been established, the relator may, if it choose, exercise its unquestioned right to remove the child from the defendants' home; that with this asserted right the court is powerless to interfere.   This proposition I must confidently oppose.   The custody of a destitute or dependent child, committed to an authorized agency under section 308 of the State Charities Law (added by Laws of 1923, chap. 706, as amd. by Laws of 1924, chap. 437), is not thereby placed beyond the pale of the equitable jurisdiction of the Supreme Court.   Any instrument in writing executed by any of the persons mentioned in that section and however authenticated relating to the custody of a child, together with legislative authority of the custodial agency to receive the child, cannot nullify this jurisdiction formerly exercised in chancery and now vested by the Constitution in the Supreme Court.   That the court is endowed with plenary power to control the custody of children toward whom the State stands in the relation of *parens patriæ* has been so frequently repeated in judicial decisions that a mere citation of the authorities without extended reference should be sufficient to silence all debate.   (*Wilcox* v. *Wilcox,* 14 N. Y. 575; *People ex rel. Pruyne*

v. *Walts*, 122 id. 238; *Matter of Knowack*, 158 id. 482; *Matter of Lee*, 220 id. 532; *Finlay* v. *Finlay*, 240 id. 429; *People ex rel. Keator* v. *Moss*, 6 App. Div. 414; *Matter of Standish*, 197 App. Div. 176; affd., 233 N. Y. 689.)

Nor can this jurisdiction be limited even by direct legislation, much less by inference. (*People ex rel. Mayor, etc.,* v. *Nichols*, 79 N. Y. 582.)

This view is fortified by section 310 of the State Charities Law (added by Laws of 1923, chap. 706, as amd. by Laws of 1924, chap. 437), which provides that the State Board can require an authorized agency to remove a child that has been improvidently placed and if, for any reason, its direction is not obeyed, the Board may bring the matter before the Children's Court or other court having jurisdiction, for adjudication and disposition. Section 309 (added by Laws of 1923, chap. 706, as amd. by Laws of 1924, chap. 437) vests the State Board with power to prohibit an authorized agency, after a hearing, from placing out children whenever it shall decide " that any disposition of a child * * * has been made * * * without due inquiry as to the character and reputation of the person with whom such child is placed, or in such manner that such child is subjected to cruel and improper treatment or neglect, or immoral surroundings * * *."

The statute, therefore, that is invoked as a bar to judicial examination into the right of an authorized agency to reclaim a child expressly provides the means by which the action of such agencies may be reviewed in one instance by a court of competent jurisdiction, on the initiation of the State board. It cannot, however, be successfully maintained that the court cannot act except at the request of the latter board. It must be held with insistence that the court not only has the power but is impressed with the duty to inquire into the welfare of dependent children whenever informed from whatever source that such welfare is imperiled. It has been our traditional policy, frequently repeated in judicial opinion, that such children are the wards of the State and the Legislature expressly declared it in statutes establishing children's courts, so denominated here, at the sacrifice of technical accuracy, for convenience. (Laws of 1910, chap. 611; Laws of 1913, chap. 270; Laws of 1918, chap. 464.)

I am aware that the Children's Court Act (Laws of 1922, chap. 547, as amd.) does not contain such declaration, but that omission cannot be interpreted as evidence of the abandonment of the firmly established doctrine approved alike by the courts and Legislature and long adhered to in practice.

One of three courses of action is permissible, sustain the writ

**138** People ex rel. Our Lady of Victory I. Home v. Venniro.

Supreme Court, December, 1925.                    [Vol. 126

and return the child to the custody of the relator, deny the writ and leave the child with the defendants, or in case neither the relator nor the defendants be proper custodians, place the child under other guardianship. The first mentioned method of procedure is to be followed when the defendants are unfit persons to train the child and the relator is able to give him approved care, or when both parties are proper guardians and the relator has the superior right; the second, when a relator is unfit, the defendants competent, and the third, when the welfare of the child demands that its custody be denied to both parties. Our task is to determine which one of these three permissive dispositions of the infant should be made.

The child, Herbert Anderson Payment, was born in November, 1920, and soon thereafter came into the custody of the relator by virtue of a supposed surrender in writing, executed by " Ida Payment, guardian." It transpired at the hearings that Ida Payment was the maternal grandmother of the child. This instrument in itself vested no right to the custody of the child in the relator. (Laws of 1884, chap. 438.) While the proceeding was pending, however, and on July fifteenth, an instrument was executed and acknowledged by the mother of said child in which it is recited that the child was abandoned to the custody of the relator on or about December 15, 1920, and all parental rights were surrendered. Any infirmity, therefore, in the first instrument of surrender was obviated.

On July 18, 1923, the child was placed with the defendants and he is still in their custody. No adoption papers have ever been executed and, in the present situation, cannot be without the consent of the relator.

The boy is of English-speaking parentage and the defendants are Italians. This circumstance bulks largely into the reasons assigned by the relator for now interfering in the child's environment. Other reasons were advanced growing out of the material conditions of the home in which the child was living. It would unduly prolong the discussion to point out in detail the testimony bearing upon the home conditions. It must suffice to say that there were repeated suggestions on the part of the supervisory visitors for the betterment of home conditions to some of which the defendants made an adequate response.

There is no question but that the defendants are devotedly fond of the child and that their affection is returned in good filial measure, but this is not the sole or controlling factor in determining what is best for the child's welfare. The ultimate condition upon which the decision in cases of this and kindred character depends is the welfare

of the child after taking into account all the circumstances that may affect his life.

When the defendants made application to the relator for a child, they expressed a preference for one of Italian parentage. None being available at that time, the Payment infant was given to them. He was placed in their care under the express understanding that they should not have permanent custody except with the approval of the relator, after a trial had been made of the newly-established relationship between the child and his custodians. In this the defendants acquiesced and have recognized it from time to time as it was called to their attention in connection with the suggestions for home improvement. It is unfortunate that so long a period has elapsed since the child was first placed in the defendants' home, making a separation now so much more regrettable. The defendants are worthy folk, childless, eagerly craving the affection of children, and the hardship of having the child taken from them should not be imposed except for adequate reasons. Doubtless many children have homes apparently less favorable to their best development than that of the defendants. I am unwilling to condemn it as unsuitable if a proper adjustment of the child could be achieved. However, the relator having the duty of providing homes for the children placed out by it, should be given the privilege of choosing such as meet its own standard of fitness. This case, therefore, is more nearly identified with the first class above enumerated, for any one familiar with the character of the charity so nobly undertaken and efficiently administered as that of the relator, must concede the excellent results of its benevolence. The custody of the child, therefore, is to be determined by the superior right of the claimants to it. The relator has this superior right by virtue of section 303 of the State Charities Law, and to it the custody of the child should be awarded. It may be said too, as an additional reason, that since the child cannot be adopted without the consent of the relator, it cannot acquire the complete rights of a child nor enjoy the benefits of a complete parental relationship.

This conclusion is reached with genuine regret for the necessity of it, but with the hope that the defendants may find another child upon whom to lavish their affection and with whom there can be the completed and essential relation of parents and child.