THE PEOPLE OF THE STATE OF NEW YORK ex rel. EDYTHE MICHAEL, Relator, against JULIUS MICHAEL, Defendant.

Supreme Court, Special Term, New York County, February 24, 1947.

*Bernard Sandler* for relator.

*Sidney Feldshuh* for defendant.

WALTER, J. Relator, Edythe Michael, and defendant, Julius Michael, were married in New York, June 1, 1939. No children were born to them, and in August, 1943, they adopted a male child then three weeks old and gave him the name of Donald Lawrence Michael.

In September, 1946, relator and defendant separated. They signed a formal separation agreement on September 12, 1946, and modified it by another formal agreement on October 25, 1946. That agreement provides:

" That except as herein otherwise provided, the sole and exclusive custody of said child, Donald Lawrence Michael, during his minority, is hereby given to the husband and the said husband shall maintain, educate and support the said child, at his own cost and expense, and at no cost and expense at any time of the wife herein.

" (a) The wife shall have the right of visitation as follows:

" On any day during the week, between the hours of 9 A. M. and 8 P. M., except, however, that the wife does agree that she will phone in advance of her coming and advise the husband, or such other persons of his household, of her coming.

" Under no circumstances, shall the wife remove said child from the custody of the said husband or such persons of his household.

" The terms and conditions of this agreement shall be incorporated in any decree for separation or divorce or any other type or kind of matrimonial action, in the State of New York, or any other jurisdiction, which either of the parties hereto may hereafter institute or commence as against the other."

On October 26, 1946, relator went to Reno, Nevada, and she there thereafter commenced suit for divorce. Defendant

duly appeared in the divorce action, and on December 16, 1946, the Nevada court made a decree awarding relator an absolute divorce. That decree further provides: "It Is Further Ordered, Adjudged And Decreed that the agreement, made and entered into by and between the plaintiff and the defendant herein on, and dated September 12th, 1946 as modified by the parties on October 25, 1946, wherein and whereby they settled their property rights, and the right, claim and demand of the plaintiff for support from the defendant for herself and the minor child, and the custody of said minor child, be and the same is hereby adopted, approved and confirmed, and incorporated in and made a part of this decree by reference."

Relator returned to New York on December 22, 1946, and on January 29, 1947, she petitioned for this writ of habeas corpus, alleging that she had been denied the right to see said Donald Lawrence Michael and that she was reliably informed that said infant was then in the custody of an elderly relative of her ex-husband, defendant Julius Michael, at 125 West 16th Street in the county of New York.

By virtue of its general equitable jurisdiction, this court may order and direct as to the custody and control of infants within the State, and may exercise its jurisdiction to do so either upon writ of habeas corpus or upon petition (*Finlay* v. *Finlay*, 240 N. Y. 429, 432). In all such cases the guiding principle, the paramount and controlling consideration, is the welfare of the child (*People ex rel. Sisson* v. *Sisson*, 271 N. Y. 285, 287; *Matter of Lee*, 220 N. Y. 532, 538; *People ex rel. Pruyne* v. *Walts*, 122 N. Y. 238, 242; *People ex rel. Sternberger* v. *Sternberger*, 12 App. Div. 398; *Matter of Rich* v. *Kaminsky*, 254 App. Div. 6; *Matter of Meyer*, 156 App. Div. 174, 176; *Matter of Gustow*, 220 N. Y. 373, 377; *People ex rel. Glendening* v. *Glendening*, 259 App. Div. 384, 393, affd. 284 N. Y. 598), and to achieve that welfare the court may take the infant from a parent or legal guardian (*People ex rel. Pruyne* v. *Walts*, 122 N. Y. 238, 242, *supra; Wilcox* v. *Wilcox*, 14 N. Y. 575; *Matter of Lee*, 220 N. Y. 532, 539, *supra*), from a charitable agency or a welfare commissioner (*People ex rel. Our Lady of Victory I. Home* v. *Venniro*, 126 Misc. 135; *People ex rel. Converse* v. *Derrick*, 146 Misc. 73), and even from one to whom the court itself has committed such custody (*Matter of Knowack*, 158 N. Y. 482; *People ex rel. Terman* v. *Terman*, 267 App. Div. 173, 174), or one to whom another court of competent jurisdiction has awarded custody (*People ex rel. Allen* v. *Allen*, 105 N. Y. 628;

*People ex rel. Riesner* v. *N. Y. Nursery & Child's Hospital,* 230 N. Y. 119; *Matter of Stewart,* 77 Misc. 524; *Matter of Standish,* 197 App. Div. 176, affd. 233 N. Y. 689).

Of course, the judgment of another court of competent jurisdiction fixing custody cannot be disregarded or ignored either arbitrarily or capriciously or merely because we do not agree with it (*Ansorge* v. *Armour,* 267 N. Y. 492; *People ex rel. Tull* v. *Tull,* 245 App. Div. 508), but nothing in those cases overrules the holding in *People ex rel. Allen* v. *Allen* (105 N. Y. 628, *supra*) that a foreign decree of divorce which also determines custody of children of the parties is a fact or circumstance bearing upon the discretion to be exercised by this court upon a subsequent habeas corpus, rather than something which dictates or controls that discretion. A good discussion of the effect of such a decree in subsequent habeas corpus proceedings will be found in *Matter of Stewart* (77 Misc. 524).

In *Matter of McDevitt* (101 Misc. 588) it was said that a writ of habeas corpus is a common-law writ and upon a hearing thereof the court cannot upon equitable principles determine that the welfare of the child requires that it be taken from one having its legal custody — the proper practice when that relief is sought being to proceed by petition rather than by writ of habeas corpus. It seems to me, however, that that is plainly contrary to the authorities above cited, including particularly those which are cited in *Matter of McDevitt (supra)*.

*People ex rel. Pruyne* v. *Walts* (122 N. Y. 238, *supra*) was a habeas corpus proceeding and it was expressly stated that the jurisdiction to be exercised was equitable in character and that it was entirely competent for the court to take a child from its legal guardian when such disposition is for the best interest of the child.

*People ex rel. Sternberger* v. *Sternberger* (12 App. Div. 398, *supra*) likewise was a habeas corpus proceeding and the opinion there is equally emphatic in its assertion that equitable considerations must be taken into account.

*People ex rel. Allen* v. *Allen* (105 N. Y. 628, *supra*) holds that what shall be decided upon a writ of habeas corpus affecting the custody of an infant is so much within the discretion of the court that an appeal to the Court of Appeals was dismissed.

In *People ex rel. Terman* v. *Terman* (267 App. Div. 173, *supra*) it was held to be erroneous for Special Term to dismiss a writ of habeas corpus obtained by a mother upon the sole ground that there was in existence a judgment which gave custody of the child to the father. The Appellate Division

ruled that Special Term should have taken evidence and determined what was best for the child.

In *People ex rel. Riesner* v. *N. Y. Nursery & Child's Hospital* (230 N. Y. 119, 124, *supra*) it was explicitly stated that the writ of habeas corpus has been extended to controversies touching the custody of children which are governed, not so much by considerations of strictly legal rights, as by those of expediency and equity, and, above all, the interests of the child.

*New York Foundling Hospital* v. *Gatti* (203 U. S. 429) likewise holds that a habeas corpus proceeding involving the custody of a child is not decided on the legal rights of the petitioner but upon the court's view of the best interest and welfare of the child.

The most obvious justification for departing from a prior judicial determination of custody is a change of circumstances since the prior determination was made. (See *Matter of Knowack*, 158 N. Y. 482, *supra*.) Whether or not such change is the only justification for such departure need not now be decided, but it is appropriate to point out that in this case only two months have elapsed since the Nevada court made its decree and that that decree was made upon relator's application and is based upon and carries out an agreement made between the two parties to that suit and to this proceeding only five months ago.

Upon the hearing herein it was suggested that that agreement was the result of duress exercised by defendant upon relator, but in making the agreement relator was represented by counsel of her own selection who was actually present when relator signed it in his office. What counsel is now pleased to call duress in reality is nothing more than the fact that relator signed the agreement because it gave her all that she could get defendant to agree to give her and she preferred to get out of her marriage on terms he would agree to rather than stay in it. But even if the agreement originally might have been attacked on the ground of duress or fraud, relator has now induced the Nevada court to accept and adopt it, and I do not think she could now attack its legality even if the facts warranted an attack. (See *Hoyt* v. *Hoyt*, 265 App. Div. 223.)

Regardless of the motives or reasons which led relator to agree that defendant should have custody of the child the fact is that she did so, and as she did so she cannot now obtain such custody for herself upon a mere showing that she has experienced a change of mind or heart and is a fit person to have

custody and is able and willing to support the child. To get that relief she must allege and establish that the interest of the child requires such change of custody. (See *Matter of Gustow*, 220 N. Y. 373, 378, *supra*.)

Relator has not met that burden. On the contrary, I think the interests of the child require that he remain where defendant placed him in November, 1946, after unsuccessful efforts to obtain a suitable governess and nurse, viz., with defendant's mother, a woman fifty-six years of age who has four grown children of her own and who lives with her husband in reasonably comfortable circumstances.

Defendant urges that the rights of visitation accorded relator by the agreement and decree should be at least temporarily suspended; but although daily visitation is more than I myself would direct, and although I think relator has been unwise and inconsiderate in countenancing if not encouraging and procuring publicity for the child and herself in connection with this proceeding, I do not think her conduct justifies me in withholding from her the right of visitation which the agreement and the existing decree provide.

The writ is accordingly dismissed, with the consequent effect of leaving the situation what the parties themselves and the Nevada court have made it.