Harold Tessleb, J.
This is a petition for a writ of habeas corpus. Petitioner is the mother and respondent, the father of the child, almost three years old, who was born to the parties when they were living together as husband and wife. The child presently resides with the respondent and the latter’s mother and father. Petitioner is 28 years old, the respondent 43.
The parties were married in April, 1956. On May 31, 1960, they entered into a separation agreement by the terms of which *12 the respondent was given custody of the child by the following language: “ The Husband shall have custody of the issue of the marriage, but the Wife shall have the right of visitation on Sunday of each week at any reasonable time, with the right to take the child for reasonable periods of time. In addition thereto the Wife shall have the right to take the child for a two-week period during the summer months.” Thereafter, on June 23, 1960, petitioner commenced an action for divorce against the respondent in Alabama, in which action the latter appeared by counsel. This action resulted in the entry of a decree of divorce in favor of the petitioner on June 23,1960. The petitioner married Thomas De Grace shortly after this, and presently lives with him as husband and wife. Petitioner stated on cross-examination that she left the respondent in July, 1959, and that she first met her present husband in February, 1959, when he came to work for her in the beauty parlor.
The record discloses that the petitioner voluntarily turned the child over to the respondent pursuant to the separation agreement.
For more than a year before this voluntary “abandonment” of the child, and while the parties were living together, the petitioner had given the care and custody of the child to the paternal grandmother for three days a week, Thursday through Saturday, while the petitioner worked in the beauty shoppe. The grandmother took care of the child over an extended period of time for these three days, while the child returned to the petitioner’s custody and care from Sunday through Wednesday, the days during the week when she did not work in the business.
There is no claim of coercion or duress in connection with this agreement. This was the voluntary act of the petitioner, motivated solely by the fact that she was conducting a beauty parlor business, and her attachment to the business did not permit her sufficient free time to properly care for the child. She is still in that business with her new husband, but states that she is now in a position to quit working, and will do so and give her full time to the care of the child, if she is granted custody. Since taking custody .about seven months ago, respondent has taken care of the child properly and well. He lives with his mother and father, and changed his employment hours with RCA some four months ago from daytime to the night shift — 12 midnight to 8:00 a.m.
The petitioner admits that the respondent loves the child, and makes no charges that the child is improperly cared for or neglected. Petitioner puts forth that the grandmother (paternal) has been ill, and is just recently returned from a hos *13 pital stay. Petitioner suggests that perhaps the grandmother is presently infirm and unable to properly care for the child and its needs. The evidence is to the contrary. While respondent’s mother is 61 years of age and not blessed with the most robust health, she appears to be in reasonably good health, and well able to minister to and care for the child as she has been doing for almost two years, both part and full time. She appears to have well recovered from her recent illness. The court is satisfied that she, together with the respondent and the grandaunt (the grandmother’s sister), who comes in daily and helps with the housework and chores, are and have been taking good care of the child.
Upon the presentation of the question of custody of a child by habeas corpus, it is the court’s duty to concern itself solely with the welfare and well-being of the child. (People ex rel. Herzog v. Morgan, 287 N. Y. 317; Matter of Lee, 220 N. Y. 532, 538.) The New York Supreme Court, as the successor to the prerogative of the Chancellor, acts as parens patriae, to do what is best for the child. (Finlay v. Finlay, 240 N. Y. 429, 433, 434.)
The court is appreciative of the fact that the petitioner loves the child and that as her mother may give the child a love and care that in some respects would be superior to that bestowed by a father and grandparent. However, when we consider that the petitioner voluntarily turned over the child to the father because she was tied down to her business, the court is compelled to consider the other factors involved, all of which must materially affect the welfare of the child, present and future. Is it best to uproot this child from its present home and put it in the custody of the petitioner and her new husband? I am persuaded to answer in the negative. All of the petitioner’s actions herein, together with her having voluntarily surrendered custody of the child for personal reasons, first to the grandmother, for three days a week, and later to the respondent permanently, compellingly suggests to the court that the petitioner is not temperamentally suited or otherwise prepared to best care for the child. It should be noted that during all of this time petitioner’s husband (respondent) was earning a comfortable wage and providing for her and the child.
The actions and conduct of the petitioner suggest that the child’s best interests and welfare would be served by superseding any alleged superior right to custody the mother may be said to have. It is well said that second only to love in the relationship of a parent and child is stability. Petitioner’s conduct throughout indicates strongly an instability which contrasts markedly with the respondent’s warm, steady and sustained rela *14 tionship with his child. He has, with the help of his mother and with a will that impelled him to change his working hours from daytime to nighttime, so as to be with the child during the daytime hours, maintained a comfortable and proper home that speaks well for the physical and moral well-being of the child, now and in the future.
The court concludes that the interests and welfare of the child will be best served by leaving her custody with the respondent, with the provision, however, that petitioner’s visitation rights be continued as set forth in the separation agreement, dated May 31, 1960. For all of the foregoing the writ is dismissed.