THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARGARET L. FOUSSIER, Respondent-Appellant, *v.* PHILIP UZIELLI, Appellant-Respondent.

First Department, June 3, 1965.

*Vincent J. Malone* of counsel (*Angelo A. Maurino* with him on the brief; *Parker, Duryee, Benjamin, Zunino & Malone,* attorneys), for respondent-appellant.

*Edward W. Keane* of counsel (*Henry N. Ess, III* and *Robert P. Borsody* with him on the brief; *Sullivan & Cromwell,* attorneys), for appellant-respondent.

STEVENS, J. This is an appeal by respondent husband, the father of the infants (respondent), from a judgment rendered March 10, 1965, which sustained a writ of habeas corpus and awarded custody of the two infant children to the petitioner, the wife and mother of the infants. Petitioner wife (petitioner) cross-appeals from so much of judgment as failed to direct maintenance payments for the children and limited counsel fees to $3,500.

The parties were married in the City and State of New York August 14, 1954. About five months later respondent was assigned by his employer, California-Texas Oil Company (Caltex), to work in France and the family moved to that country. While living there two children, the subject of this proceeding, were born, Isabelle, born December 26, 1955, and

Beatrice, born June 21, 1960. As time passed the marriage of the parties began to disintegrate and culminated in a separation. July 21, 1961, they entered into a separation agreement, each being represented by counsel at the time. By the terms of the agreement respondent was given "exclusive custody, care and control" of the children during their respective minorities, with liberal visitation rights to the petitioner. The agreement by its terms was to be governed, construed and regulated by the law of New York.

Shortly thereafter and in August, 1961, petitioner obtained a divorce in Mexico. The decree provided that the minor daughters should remain in the custody of respondent in accordance with the separation agreement and incorporated such agreement by reference. December 15, 1961, petitioner, who returned to and remained in France, remarried and is now living in France with her second husband. There is one child of that union, a daughter, age two and one-half years at the time of the hearing, who resides with her parents. November 1, 1961, respondent was reassigned by Caltex to New York and remained here until July 14, 1962, when he was sent out on various job assignments as an area executive for France, Germany and Switzerland. Meanwhile in New York, on December 8, 1961, respondent married the former wife of petitioner's present husband, who, at that time had, and has, custody of an infant son of that union. There is testimony that respondent met her subsequent to the separation of the parties. December 29, 1961, the infants, the subject of this proceeding, came to live with respondent and his present wife in New York.

In 1963 respondent was reassigned to Paris by Caltex. In August, 1964 he resigned from Caltex to accept employment at a substantially higher salary with Lambert & Company, a New York investment banking firm, by whom he is presently employed. At the time of the hearing on the writ of habeas corpus, sued out by petitioner in December, 1964, it was brought out that respondent had signed a contract for the purchase of a 15-room duplex co-operative apartment in 10 Gracie Square, City of New York, in which the family expected to live.

In March, 1964, while all of the parties were in France, petitioner instituted a proceeding in the courts of France against respondent for an amendment to the rights of custody in respect of the minors Isabelle and Beatrice. Petitioner sought custody of the infants. In that proceeding and in the present proceeding petitioner's present husband, Madame Billotte and her husband General Bilotte, grandparents of the infants and mother and stepfather respectively of respondent, testified on

behalf of petitioner. Respondent and his present wife testified on behalf of respondent. In August, 1964, while the proceeding was pending, respondent returned with the children to live in New York. October 12, 1964, the French court handed down a decree awarding custody to petitioner. The decree asserted respondent had given assurances the children's situation would not be changed pending the decision, though it also pointed out respondent, in justification, claimed he was obliged to accept a better position in the United States. Additionally, the decree gave generous and, what might be termed unusual, visitation rights to Madame Billotte, with little provision for respondent, and directed respondent to pay for the maintenance of the children. In the case in France, as well as in the proceeding at Special Term on the hearing of the writ, great weight seems to have been accorded two letters written by respondent's present wife, one to respondent's mother, the other to his step-father, and to the fact of dismissal of a governess who had been with respondent's parents and respondent some 30 years, and who indeed had assisted in the rearing of respondent. Examination of the letters, and consideration of the explanation advanced as to the occasion for and circumstances under which such letters were written, persuades us that too great a significance was attached thereto. Particularly is this true in light of testimony appearing in the record of the hearing at Special Term.

In sustaining the writ the court, in addition to determining that it would not disturb the decree of the French court on the theory of comity, concluded the interests of the children would be best served by awarding custody to the petitioner. With this conclusion we are not in accord.

In determining the question of custody of infants, in a contest between parents, the question of paramount concern is what is best for the welfare of the children (*People ex rel. Herzog* v. *Morgan*, 287 N. Y. 317; see Domestic Relations Law, § 70). The court "acts as *parens patriæ*" (*Finlay* v. *Finlay*, 240 N. Y. 429, 433) to make provision accordingly. An award of custody is always subject to modification or change if conditions or the requirements of the children so warrant (*Matter of Lefkon* v. *Lefkon*, 267 App. Div. 836), but the change of circumstances or requirements must be material (*Kirby* v. *Kirby*, 246 App. Div. 532).

Petitioner and respondent, both citizens of the United States, were married in New York, and the children whose custody is sought were born while the parents were living abroad, temporarily, due to the work of the father. They are Americans, and

as a part of their birthright they have a right to be raised and educated in this country (see *Matter of Kades* v. *Kades*, 25 Misc 2d 246, 249). While consideration of such right is not controlling, it is a factor of some concern which should not be lightly regarded.

Whatever might have been decreed by the French court with respect to the custody of the infants is not binding upon this court. All of the parties, including the infants, were here and the court had jurisdiction of the persons and of the subject matter. *Matter of Lang* v. *Lang* (9 A D 2d 401, affd. 7 N Y 2d 1029) cited by petitioner, may be readily distinguished. In that case the parents were of Swiss nationality. They were married, lived and divorced in Switzerland; the children, the subject of the proceeding in our Supreme Court, were Swiss, and custody had been awarded the father by the Swiss courts. Mr. Justice BREITEL observed (p. 406) that abduction by the mother of the children to the United States had not changed the domicile of the children; it "remained in Switzerland with that of the father, the legal custodian." It was expressly recognized that the full faith and credit clause of the Federal Constitution does not apply to custody decrees, and that the court was not obligated to apply the doctrine of comity. The court noted, however, that the power to "depart from principles of comity does not mean that the power should be exercised in the absence of extraordinary circumstances demonstrating that otherwise the children will suffer" (p. 406). More pertinent to the case before us in which the children are Americans, was the general principle there enunciated. "Thus, generally, the custody of children is to be established, whenever possible, on a long-term basis. Custody is not to be shuttled back and forth between divorced parents merely because of changes in their marital status, economic circumstances, or improvement in their moral or psychological adjustment" (*ibid.*, p. 409).

In the instant case, when the marriage had reached its termination it was the father, respondent herein, who, by agreement, took custody of the children. Such custody has remained with him until the present time. Remarriage by petitioner did not lead to an early demand upon respondent for custody. Indeed no affirmative step seems to have been taken in that direction until 1964. Nor is the contention of an "understanding" concerning a possible change of custody by agreement sustained in the record. The award of custody involves discretion and while not decisive, "the past conduct of the parents, the unwillingness of one or both to carry out their marital obligations are factors which may not be disregarded in determin-

ing which parent will provide the better home " (*Harrington* v. *Harrington*, 290 N. Y. 126, 130; *Matter of De Grace* v. *Leonard*, 29 Misc 2d 11).

The court found that both petitioner and respondent have love and affection for the children. There was no determination that respondent had failed to provide a good home, excellent moral and religious training, and educational opportunities. The children are happy, in excellent health, and well cared for. The fact that petitioner presently is also well able to provide for the children affords an insufficient basis to uproot and alter the lives of these children by removing them from the custody and care of the parent with whom they have lived since 1961, and who is well able to provide for their needs. (See *Matter of Greenspan*, 8 A D 2d 952; 15 N. Y. Jur., Domestic Relations, § 364.) Also, it should not be overlooked that by the terms of the decree of the French court, the rights of respondent with respect to visitation, etc., are largely illusory, while those of the paternal grandparent are almost on a par with the rights of petitioner. Respondent, who since 1961 assumed responsibility for the rearing of the infants, would be almost totally deprived of even normal visitation rights.

The children, however, should be afforded as frequent opportunity as possible to see or visit the mother whenever such can be arranged without disrupting the tenor of their lives. Obviously, so long as the French decree remains in its present form, respondent dare not take or permit the children to be taken to France. It is not unreasonable to suppose that petitioner as the prevailing party might petition or arrange for a suitable modification of such decree. Failing that, the court is of the opinion that visitation might be arranged to take place in the United States or a third country, preferably England. If the parties are so disposed, there are no insurmountable difficulties to such an arrangement. Suggestions will be entertained upon the settlement of the order.

As to the counsel fee, petitioner has " the burden of proving facts showing such necessity for the proceedings as well as a necessity for a change in custody of the child[ren]." (*Ansorge* v. *Armour*, 267 N. Y. 492, 501; *Hatch* v. *Leonard*, 38 App. Div. 128.) On the record before us petitioner did not meet that burden.

The judgment appealed from should be reversed, on the law and the facts, the writ of habeas corpus dismissed, without costs or disbursements to either party, and custody continued in the respondent (*People ex rel. Michael* v. *Michael*, 188 Misc. 901;

*Matter of Wasserman,* 203 N. Y. S. 2d 554). Settle order on notice.

BOTEIN, P. J., BREITEL, RABIN and EAGER, JJ., concur.

Judgment unanimously reversed, on the law and on the facts, without costs or disbursements to either party, the writ of habeas corpus dismissed, and custody continued in the petitioner-respondent (*People ex rel. Michael* v. *Michael,* 188 Misc. 901; *Matter of Wasserman,* 203 N. Y. S. 2d 554). Settle order on notice.